[Civ. No. 26376.    Second Dist., Div. Three.    Aug. 13, 1963.]

ROY E. PETRE et al., Plaintiffs and Respondents, v. FRANCIS R. ROEGNER, Defendant and Appellant.

Leon A. Pinney for Defendant and Appellant.

Emmett A. Tompkins for Plaintiffs and Respondents.

SHINN, P. J.—Plaintiffs, Mr. and Mrs. Roy E. Petre, brought this action to compel specific performance of a certain agreement for the sale of real property, consisting of escrow instructions, or for damages in the event specific performance could not be had and for a decree quieting title to

the real property in question. Defendant Francis R. Roegner, admitted execution of the escrow agreement but alleged by way of affirmative defense and cross-complaint that the same had been duly cancelled in writing pursuant to the terms of said agreement. The escrow instructions and certain letters between the parties concerning the same were stipulated into evidence. No oral evidence was received at the trial. A decree of specific performance was rendered in favor of plaintiffs from which defendant appeals.

The parties entered into the agreement by means of escrow instructions on January 27, 1958, by the terms of which defendant, the fee owner of certain residential property subject to a life estate in Miss Mary Pinney, was to sell it to plaintiffs for the sum of $5,000 cash. Each party paid in $150 to cover expenses and signed the instructions. Among other standard escrow provisions, the agreement set out the four clauses listed below.[1] On October 14, 1960, defendant gave notice in writing to plaintiff and the escrow holder of his cancellation of the escrow agreement pursuant to Clause 3. On January 12, 1961, Mary Pinney died. Plaintiffs requested defendant to complete the escrow by the deposit of his deed into escrow. He refused to do so. We cannot find that defendant was legally obligated to comply with plaintiffs' request.

Under stipulation the court received letters which passed between the parties over a period of some five years concerning the purchase of the property by plaintiff. While this correspondence made clear what the expectations of the parties were, it did not amount to a definite and binding agreement. The receipt of this correspondence tended to confuse

[1]CLAUSE 1
Prior to July 27, 1958, I will hand you $5,000.00 and any additional funds and instruments necessary on my part to enable you to comply with these instructions, which you are to use provided on or before the date set forth on line 1 above . . ., you hold the money and documents, if any, deliverable to me . . .''

CLAUSE 2 (Typewritten)
''It is understood that the within escrow cannot be closed until the life tenancy of Mary Pinney has been terminated.''

CLAUSE 3 (Printed)
''If the conditions of this escrow have not been complied with prior to the date set out on line 1, or any extension thereof, you are nevertheless to complete the escrow as soon as the conditions, except as to time, have been complied with, unless written demand shall have been made upon you not to complete it.''

CLAUSE 4
''Prior to the date set out on line 1, I will hand you all instruments and money necessary for me to comply therewith, including a deed of the property described, executed by Francis B. Roegner.''

the issue. There was only one agreement which consisted of the escrow instructions. This is the agreement and the only one that was pleaded and it was stipulated in writing to be the agreement upon which plaintiffs relied. It is the agreement which the judgment purports to enforce against defendant.

In August 1956, Francis R. Roegner and his father, Bernard H. Roegner, were located in New Holstein, Wisconsin, and the Petres lived in Alhambra where the property was located. Later the Roegners moved to Antioch, Illinois. Roegner was willing to sell the property for $5,000 and Petre was willing to buy it at that price and correspondence passed between them through 1956, 1957 and into January 1958, at which time the escrow instructions were executed by the parties and deposited with the escrow holder. The correspondence evidenced considerable regret and disappointment over the tenacity of Miss Pinney, who was 87 years of age. It was thought at one time that she could release her life estate and move out of the property. This idea was given up for two reasons; Miss Pinney was receiving public aid, and the disposal of her life estate would displease the public authorities, and, again, she was not mentally competent to execute a deed. In October 1957 it was thought that the deal could be closed very shortly because Miss Pinney was seriously ill with pneumonia and was not expected to survive. However, antibiotics were administered and Miss Pinney recovered.

The trial court was confronted with the following questions. Was the elimination of the life estate through the death of Miss Pinney, or otherwise, a condition precedent to the consummation of the sale? It was stated in the findings that the parties agreed that the sale could not be completed until the death of Miss Pinney. Of course, the elimination of the life estate was a condition precedent. (Civ. Code, §§ 708, 1434, 1436.) Petre had no intention of buying the property subject to Miss Pinney's life estate and there was no agreement that either party would be bound indefinitely.

A second question was whether the offer of plaintiffs to buy and defendant to sell was subject to termination by either party if the life estate were not terminated by July 27, 1958. The agreement so provides. It can only have been understood as giving either party the right to terminate the escrow and the agreement, which consisted of the escrow instructions, in the event the title was not cleared of the life estate by July 27th. Instructions in this form as used by the trust depart-

ment of banks and title companies have long been accepted as an effective means for expression of the rights of the parties in the event of noncompliance with the conditions of an escrow. (*Leland* v. *Craddock,* 83 Cal.App.2d 84 [187 P.2d 803]; *Hastings* v. *Bank of America,* 79 Cal.App.2d 627 [180 P.2d 358]; *Weaver* v. *Casad,* 86 Cal.App.2d 593 [195 P.2d 81]; *Leiter* v. *Handelsman,* 125 Cal.App.2d 243 [270 P.2d 563]; *Altadena Escrow Corp.* v. *Beebe,* 181 Cal.App.2d 743 [5 Cal.Rptr. 530].)

■ A third question which may have been suggested by the correspondence was whether there was a subsequent agreement modifying the January 28, 1958, agreement so as to bind plaintiffs to buy the property and defendant to sell it upon the death of Miss Pinney, regardless of the length of time that might elapse before that event occurred. There was no pleading or evidence of such an agreement. February 15, 1958, plaintiffs wrote that the escrow officer stated that if Miss Pinney did not die within six months he, Mr. Murphy, would extend the escrow for another six months, but defendant did not accept the suggested agreement. He merely replied on April 14, 1960, ''I am sorry to say that nothing further has developed in regard to the N. Curtis Avenue property'' and that he was investigating the possibility of a ''transfer'' of Miss Pinney's life estate.

Another question could have been whether defendant, if he desired to withdraw from the deal, was required to do so within a limited time. It appears that this question was not presented to the court in the pleadings or the evidence and the court did not purport to decide what would have been a reasonable time to wait for Miss Pinney to pass away.

■ It is mildly suggested that a further question could have been whether the delay of defendant from July 1958 to October 1960 operated to estop him from electing to terminate the agreement. Although it appears from the correspondence that plaintiff advised defendant that he had been contemplating buying another lot, but preferred to wait until he could get the lot of defendant's, no facts were alleged as to any representation or promise made by the defendant to keep an offer to sell open during the entire lifetime of Miss Pinney, or which would have operated as an estoppel, and the court made no finding that defendant was estopped to exercise his right to terminate the agreement.

■ The judgment in favor of plaintiffs appears to have been rendered upon the theory that the parties agreed the

sale would be consummated whenever Miss Pinney died. No doubt, that was the original intention, but there was mutual miscalculation as to when that event would occur. If the understanding of the parties had been that there would be no limit upon the time for performance by either party, they had an opportunity to so provide in their agreement, but did not do so. The fact that they limited the time of performance to six months is conclusive as to the terms of an agreement that each party was bound to perform if the life estate should be terminated within six months, but that either party could release himself from any obligation to consummate the sale if that condition was not met. If Petre had decided he had waited long enough he could have withdrawn from the deal, and the fact that he did not do so did not detract from Roegner's right to withdraw.

It was stipulated at the trial that the property had increased in value to $7,500. It is inferable that the non-resident owner learned that the property had increased in value from August 1957 to October 1960 and considered that a sufficient reason for declining to sell it for $5,000.

Specific performance could not be decreed without rewriting the contract so as to require performance by each party upon termination of the life estate at any time in the future, in disregard of the plain meaning of the agreement that neither party would be bound for more than six months. The courts have no power to do this.

The judgment is reversed with instructions to make new conclusions of law in accordance with this opinion and to enter judgment for defendant.

Ford, J., concurred.

Files, J., dissented.

A petition for a rehearing was denied September 10, 1963. Files, J., was of the opinion that the petition should be granted. Respondents' petition for a hearing by the Supreme Court was denied October 9, 1963.