[Civ. No. 32125. Second Dist., Div. One. June 11, 1968.]

LUCYLE MOSS, Plaintiff and Appellant, v. MINOR PROPERTIES, INC., Defendant and Respondent.

848

Mathon, Rosensweig & Katz, William Rosensweig and Earl W. Warren for Plaintiff and Appellant.

Bernard I. Segal and James H. Karp for Defendant and Respondent.

FOURT, J.—Plaintiff Lucyle Moss, the vendor under a contract for the purchase and sale of certain real property, appeals from the judgment of the trial court denying her specific performance or damages from the purchaser, Minor Properties, Inc.

Appellant contends (1) that respondent was not entitled to terminate as it did the escrow for the transfer of the real property when it failed to close on March 1, 1965, pursuant to its terms; (2) that the court erred in finding that there was no waiver by respondent of the requirement that the deed be recorded on or before March 1, 1965; (3) that the court erred in failing to make certain findings requested by appellant (i.e., that the sales price represented the fair and reasonable value of the property; that appellant deposited an executed grant deed in escrow before February 26, 1965; that respondent had the duty to obtain the lender's written approval of itself and was tardy in supplying to the lender the required corporate resolution to borrow); (4) that the court erred in denying her a new trial. These contentions are without merit.

The evidence shows that appellant and respondent in January of 1965 negotiated through a broker the purchase and sale of certain real property improved with an apartment building. Copies of three different deposit receipts which were prepared in the course of negotiations were introduced in evidence. The printed matter and handwriting on the face of each is identical, but no copy is identical in the terms written on the reverse side. These receipts indicate that respondent made an offer to purchase the subject property, to which appellant responded with a counter-offer, and finally, Minor Properties, Inc., made a second offer to purchase on the same terms as their original offer, but waiving certain contingencies regarding apartment leases and inspection. Each offer and counter-offer was communicated by a real estate broker to the principals, who were not present together in the same place at any time, and neither appellant nor anyone acting in her behalf signed an acceptance of respondent's final offer, thus rendering the deposit receipts a nullity.

Thereafter, on January 26, 1965, appellant and respondent each executed a copy of identical escrow instructions relating to the subject property establishing an escrow for the transfer thereof at Security First National Bank. These instructions,

which varied from the printed and handwritten terms on the deposit receipts in numerous respects, establish the sole and entire evidence that appellant as vendor and respondent as purchaser entered into an agreement for the purchase and sale of the subject real property for the sum of $200,000.

It is evident that Minor Properties, Inc., by these escrow documents agreed to deposit in the escrow before March 1, 1965, the required money and instruments and directed the escrow holder to use them provided that on or before that date two conditions prevailed: (a) the escrow agent held whatever money and/or documents were deliverable to the purchaser and (b) instruments had been recorded which entitled the escrow agent to obtain the specified policy of the insurance for the purchaser.[1] Although the instructions required the seller to pay for and procure the title insurance policy, the escrow agreement contemplated that the deed would be recorded prior to the close of escrow. The instructions nowhere provide that the policy of title insurance should be filed in escrow before recordation of the deed entitling the purchaser to such title protection. It was further expressly agreed that the deed

---

[1] These escrow instructions provided, among other things, that: "PRIOR TO March 1, 1965, I [respondent Minor Properties, Inc.] will hand you $45,000, . . . and any additional funds and instruments necessary on my part to enable you to comply with these instructions, which you are to use provided on or before the date set forth on line 1 above, [March 1, 1965] as qualified by the provision at the top of page 2 hereof, you hold the money and documents, if any, deliverable to me under these instructions and instruments have been filed for record entitling you to procure Standard Coverage Form policy of title insurance issued by or through Security Title Insurance Company with title company liability for the amount of total consideration on real property . . . [legal description] showing ............................................................: Title vested in MINOR PROPERTIES, INC., a Corporation, ..............

Free of encumbrance except: ................................... Mortgage or Trust Deed securing an indebtedness as per its terms, now of record (Lenders' statements to show unpaid balances of principal of $122,000.00, $33,000.00, but if the same should show to be more or less than said amount, then you are to keep the total consideration the same as shown above, by accordingly adjusting the CASH THROUGH ESCROW which the Grantee assumes and agrees to pay, and the deed may so recite, . . . 'Close of escrow' shall mean the day papers are filed for record.".

The instructions executed by the seller provided in pertinent part: "I HEREBY APPROVE AND AGREE TO BE BOUND BY THE FOREGOING INSTRUCTIONS AND PROVISIONS, PRIOR TO the date set out on line 1 herein, I will hand you all instruments and money necessary for me to comply therewith, including a deed of the property described, executed by LUCYLE MOSS, a widow which you are authorized to deliver provided you hold in this escrow for the account of the parties executing said deed, the money and instruments deliverable to me under these instructions .... ........................................... I agree to pay on demand charges and expenses incurred by you for me, including charges for the title policy, offset statements [etc.]. . . ."

could recite that the purchaser assumed the obligation for payment of the two identifiable encumbrances of record.

The agreement further provided on page 2 thereof "If the conditions of this escrow have not been complied with prior to the date set out on line 1 [March 1, 1965], or any extension thereof, you are nevertheless to complete the escrow as soon as the conditions, except as to time, have been complied with, unless written demand shall have been made upon you not to complete it." Clearly the giving of notice not to complete escrow was not limited to one party to the escrow agreement, but the escrow could be terminated by either, acting unilaterally, if the conditions were not timely fulfilled. As the trial court observed: "Although evidence of the filing of numerous documents and approvals was presented, most of these serve no purpose herein other than to show that one party or the other had not defaulted in filing a given item." We shall, therefore, refer only to the documents relevant to the issues presented on appeal.

Under date of February 23, 1965, appellant executed a deed of the property in favor of Minor Properties, Inc., and this deed was deposited in the escrow prior to February 26, 1965.

Home Savings and Loan Association advised the escrow holder during the morning of February 26, 1965, that it approved the buyer and was mailing a letter to that effect. The escrow officer called Mr. Minor, an officer of respondent corporation, to relay this information and advised him that the remainder of the purchase price should be deposited in the escrow. At Mr. Minor's request the escrow officer then called Mrs. Minor, treasurer of Minor Properties, Inc., who inquired as to the amount respondent would be required to deposit in escrow. The escrow officer stated that she would have to calculate and call back, which she did before 3 p.m. that day.

Mrs. Minor testified that after the escrow officer's final call, she went to a building and loan association (which closes at 4 p.m.) and withdrew funds, then went to a bank to obtain a cashier's check, and arrived at the escrow with her husband shortly after 4 p.m. The escrow officer confirmed that Mr. and Mrs. Minor arrived there some time shortly after 4:30 p.m. and stayed until nearly 6 p.m. During this visit the two officers of the corporate purchaser deposited the remainder of the purchase price in escrow and were informed by the escrow officer that the escrow would not close on March 1, 1965.

At about 10 a.m. on March 1, 1965, the escrow officer sent the deed to the title company by messenger.

.Although it was established that the title company customarily presented deeds for recording when the office of the county recorder opened at 8 a.m., there was no evidence to indicate that later recordation was prohibited, and this custom does not of itself prevent presentation of deeds at a later hour. An officer of the title company testified that recording at a later hour has in fact been done and this involves a different routine in the office of the title insurance company.

The morning mail on March 1, 1965, brought the amended (up-to-date) beneficiary's statement from Home Savings and Loan Association to the escrow but the promised acceptance of the buyer was not enclosed. A telephone call by the escrow officer elicited the fact that the enclosure had been omitted through an oversight. The escrow officer determined that this was an oversight on the part of the lender and called the real estate broker, who departed for Glendale about 1:10 p.m. to pick up the letter.

According to the escrow officer, the officers of respondent purchaser appeared at the bank in the early part of the afternoon and handed her their letter of termination which reads in part: ". . . you are hereby given notice that Minor Properties, Inc. does hereby cancel the above captioned escrow in the event said escrow is not closed on or before March 1, 1965." This is followed by demands, severally, for the money and documents deposited by the purchaser, in the event that escrow was not closed by said date.

The deed, which is the only instrument required to be recorded, was not recorded on March 1, 1965, or prior to the trial herein. The close of escrow, as defined in the instructions, therefore never occurred.

Appellant first contends that respondent was not entitled to terminate the escrow unilaterally. She bases this contention on her claim that although the court made no findings to this effect, the evidence shows that appellant duly performed all conditions on her part to be performed and that but for the fact that respondent did not timely perform the conditions to be performed on its part, the escrow would have closed on March 1, 1965. Appellant relies in support of this contention upon a case which reversed a judgment of non-suit rendered by the trial court against the purchasers who sought to obtain specific performance. (*Katemis* v. *Westerlind,* 120 Cal.App.2d 537 [261 P.2d 553].) In that case, deposit receipts and escrow instructions together formed the contract and under the deposit receipt provisions, the seller had given the

broker power to extend the time for the performance of any act as much as thirty days. As the trial court herein accurately observed, that opinion holds that the defendant could not successfully contend that time was of the essence when he had given the agent of the other party the power to extend the time for the performance of any act. Appellant in the instant case never executed an acceptance of the deposit receipt terms, and we therefore are concerned not merely with late performance under a contract, but with the fact that something required to be done by a certain day was not done by that date or on any later day. The power to terminate for failure of escrow to close by the contemplated date, as closing was defined in the escrow agreement, was bilateral and the non-occurrence of that event authorized Minor Properties, Inc. to terminate the agreement as it did. Only where the power is unilateral is it limited to the party for whose benefit the provision was included to assert that time is of the essence. (*Lifton* v. *Harshman,* 80 Cal.App.2d 422, 433-434 [182 P.2d 222].) ■ " 'It is established in this state that the terms and conditions of an escrow must be strictly performed. . . . The doctrine of substantial performance does not apply.' [Citation.]" (*Altadena Escrow Corp.* v. *Beebe,* 181 Cal.App.2d 743, 745 [5 Cal.Rptr. 530] ; *Weisberg* v. *Ashcraft,* 194 Cal.App.2d 225, 231 [14 Cal.Rptr. 817].)

■ "The right to make written demand for return of the money or instruments was an integral, clear and unequivocal clause in the instructions. Even if time was not of the essence, and even if it could be found that there had been a waiver of the precise time of performance, nowhere has it been suggested in the evidence . . . that respondents waived their right to make written demand for return of their money after the . . . escrow period concluded. Were they to be denied that right, the court in effect would be altering the express terms of the contract. Neither a trial nor appellate court has the power to rewrite a contract." (*Leiter* v. *Handelsman,* 125 Cal.App.2d 243, 251 [270 P.2d 563].) In a subsequent case, wherein the only written agreement consisted of escrow instructions containing provisions identical, except as to date and monetary amounts, with those in the present case, the escrow period was six months and there was a provision that ". . . escrow cannot be closed until the life tenancy of Mary Pinney has been terminated." (*Petre* v. *Roegner,* 219 Cal.App.2d 288, 290, fn. 1 [Clause 2] [33 Cal.Rptr. 82].) The seller gave notice to cancel the escrow some time after the six-

month period was over and Mary Pinney was still alive. Although the trial court granted the purchaser specific performance, the appellate court reversed because, under the terms of the agreement, each party was bound to perform only if the life estate should be terminated within six months, but either party could release himself from any obligation to consummate the sale if that condition was not met. So, in the present case, the court cannot grant specific performance without rewriting the escrow terms and conditions to permit recording of the deed almost a year and a half (at time of trial) after the latest date to which the parties agreed to be bound. Moreover, the evidence in the present case shows that even after respondent gave notice to terminate it was physically possible still to record the deed and complete the escrow in time, on March 1, 1965.

Appellant, however, claims that the proximate cause for the failure of the escrow to close on March 1, 1965, was that written approval of the buyer, due to the failure of the buyer itself to comply promptly with the escrow covenants and conditions, was not received by the escrow holder until March 1, 1965. On February 1, 1965, Home Savings and Loan Association, beneficiary under the first deed of trust covering the subject property, forwarded to the escrow holder its beneficiary's statement. This document set out the terms, balance due and other information relative to a note in favor of that association which was secured by the superior deed of trust on the property. It contained the following language: "We will not accept a change of ownership unless loan is current. Do not close escrow until approval of buyer has been given by this Association." On February 2, 1965, appellant and respondent executed additional escrow instructions which provided, in part, as follows: "Buyers have read and hereby approve copy of beneficiary's statement from Home Savings & Loan Association and same complies with all terms and conditions regarding the first encumbrance of record on subject property. . . . You are also to comply with any other requirements of lender with regard to said encumbrance of record on subject property, including sending them a copy of the title policy when written. . . ." On February 23, 1965, the beneficiary requested a corporate resolution from the escrow officer, who promptly so notified Minor Properties, Inc. Respondent's attorney accordingly prepared the corporate resolution and sent it directly to the beneficiary which received that document on February 26, 1965. The beneficiary

gave oral approval of respondent by telephone to escrow on that day. The written approval of the purchaser was rendered by the beneficiary on February 26, 1965, and received by the escrow holder at approximately 3 p.m. on March 1, 1965. At approximately the same time, respondent handed a letter to the escrow officer instructing her to cancel the subject escrow in the event it did not close on or before March 1, 1965. It is undisputed that the last document needed by the beneficiary in order to grant its written approval of the purchaser was the corporate resolution to borrow which was not received by the beneficiary until February 26, 1965, the last business day preceding the contemplated close of escrow on March 1, 1965.

 It is elementary law that the trustor may transfer his interest without the consent of the beneficiary (Civ. Code, §§ 864, 865; *Sacramento Bank* v. *Alcorn*, 121 Cal. 379 [53 P. 813]) as completely as with such consent. Moreover, despite the wording of the beneficiary's statement received from Home Savings and Loan Association, one who is not a party to an escrow cannot issue a binding order to the escrow agent not to close the escrow unless he consents. Moreover, the provisions of the first trust deed do not impose upon the buyer the obligation to procure from the lender its written approval of the purchaser or to deliver such written approval to escrow. The first trust deed states that the lender's written consent must be had for the sale, conveyance, and alienation of the property, but makes no reference to written approval of the purchaser. Although the failure of appellant to obtain such consent might give the lender the right to accelerate the loan at its option, it in no way prevents the escrow from closing and in no manner restricts the trustor's right to alienate the property. (Civ. Code, §§ 864, 865; *Sacramento Bank* v. *Alcorn, supra,* 121 Cal. 379; *Davidow* v. *Corporation of America,* 16 Cal.App.2d 6 [60 P.2d 132]; *Aitchison* v. *Bank of America etc. Assn.,* 8 Cal.2d 400 [65 P.2d 890]; *Hollywood Lumber Co.* v. *Love,* 155 Cal. 270 [100 P. 698].)

 The escrow officer apparently acted upon two presumptions which are unwarranted, namely: (1) That the consent of a beneficiary under a deed of trust is a prerequisite to a transfer of the trustor's interest and (2) that a trust deed beneficiary could issue a directive to the escrow agent not to close the escrow without its consent. It is undisputed, however, that despite the delay occasioned in part by the escrow holder's misapprehensions the escrow might have closed by special recording on the afternoon of March 1, 1965. When

a deed recites an assumption of debt. (as the escrow. instructions herein provided it might be recited) the debt is assumed even though the grantee's signature does not appear on the deed. (*Lick* v. *Anderson*, 29 Cal.App. 491 [156 P. 70].) Thus, despite the fact that the written approval of the buyer by the lender was unnecessary and that appropriate provisions in the deed might compensate and provide for the buyer to assume that obligation, and finally despite the receipt of the written approval of the buyer on March 1, the escrow holder failed to record the deed that day.

It cannot be said that this was the fault of the purchaser, or that the duty to record the deed was that of the purchaser because the escrow had not been so far performed that the transaction could be considered complete thus changing the escrow holder from the agent of both to the agent of each party. (*Shreeves* v. *Pearson*, 194 Cal. 699, 707 [230 P. 448].)

■ "[W]henever a deed is deposited in escrow by the grantor to be delivered to the grantee upon payment by him to the escrow holder of a sum of money to be by the latter delivered to the grantor upon the production by the latter of a satisfactory certificate of title, the escrow holder is as to such deed and money the agent of both parties until such time as the said satisfactory certificate of title is produced, but he thereupon becomes the agent of the purchaser as to such deed and of the seller as to such money." (*Shreeves* v. *Pearson, supra*, 194 Cal. 699, 707-708.) In the instant case the filing of documents entitling the purchaser to a certificate of title, or policy of title insurance, was a material condition of the subject escrow and until such time as appropriate instruments were of record the seller could not provide a title policy as called for under the escrow agreement. Therefore until the deed was recorded, the transaction was not so complete as to change the nature of the escrow holder's dual agency. "An examination of the documents creating this escrow, . . . clearly show that it was the intention of the parties thereto that it was not to be closed and the relation of the escrow holder to the respective parties thereby changed until every condition expressed in the terms of the instrument creating such escrow had been fully performed." (*Shreeves* v. *Pearson, supra*, 194 Cal. 699, 708.)

■ Appellant next contends that the court erred in failing to make the following requested findings. (1) that the sales price of $200,000 was the fair and reasonable value of the property on March 1, 1965; (2) that the written approval

of the purchaser by the lender was a condition to the closing of escrow; (3) that the corporate resolution required before such written approval could be rendered was not received by the lender until the last business day before March 1, 1965; and (4) that the grant deed was in the escrow holder's possession on or before February 26, 1965, and was given to the title company by March 1, 1965. It is true that these requested findings were not made by the trial court. It has been demonstrated by our foregoing summary of the circumstances and the legal consequences thereof, however, that not only was the evidence undisputed as to all facts which appellant here asserts, except the condition of the lender's consent, but that none of these facts constituted a material issue relevant to the legal determination of the dispute between appellant and respondent. Therefore it was not incumbent upon the trial court to include these facts among its findings.

■ Appellant thirdly contends that the condition of the escrow requiring recording of the subject grant deed by March 1, 1965, was waived by the purchasers. The trial court found that when the corporate officers of respondent visited the escrow holder's offices some time shortly after 4:30 p.m. on February 26, 1965, with the cash essential to complete the escrow transaction, the escrow officer told them that the deed would not be recorded on March 1, 1965, because the lender's written approval of the purchasers had not yet been received. Appellant claims that by not responding to the escrow officer's representation, respondents waived their right to the requirement of timely performance and were not entitled thereafter to rescind the escrow without giving appellant a reasonable time within which to perform. Waiver, however, is a question of fact and not of law, hence the intention to commit a waiver must be clearly expressed. Appellant presented no sufficient evidence of any intention exhibited by respondents to waive the condition of escrow closing within the time originally contemplated. It is true that when respondent's officers visited the escrow office on February 26 and were informed that the escrow would not close on March 1, 1965, they nonetheless deposited the remainder of the purchase price in escrow. Although the sequence of these events was not established, it is of no consequence. Appellant contends that if the deposit was made after the notice was received from the escrow office, respondent thereby waived the March 1 date, but this conclusion is not warranted. The purchaser merely did what it covenanted to do and deposited the

858

money in escrow prior to the date specified therein. This determination by the trial court, founded upon substantial evidence, is conclusive on appeal. (*Kay* v. *Kay*, 188 Cal.App. 2d 214, 218-219 [10 Cal.Rptr. 196].)

Finally, appellant contends that the trial court erred in denying appellant's motion for a new trial. Although the court's order denying a new trial is not appealable (*Scales* v. *Federal Escrow Service*, 189 Cal.App.2d 84 [10 Cal.Rptr. 660]; *Rodriquez* v. *Barnett*, 52 Cal.2d 154 [338 P.2d 907]) it may be reviewed, where appropriate, on an appeal from a final judgment. (Code Civ. Proc., § 956.) The trial court in the present case, however, correctly determined the issues on sufficient evidence, and made a proper denial. No purpose would be served by conducting a second trial.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.