[Civ. No. 25104. Fourth Dist., Div. Two. Feb. 11, 1982.]

THOMAS E. FOGARTY et al., Plaintiffs, Cross-defendants and Respondents, v.
MARIA T. SAATHOFF, Defendant, Cross-complainant and Appellant.

COUNSEL

Murray & Ames and Charles E. Murray for Defendant, Cross-complainant and Appellant.

Robert G. Koch, Jr., for Plaintiffs, Cross-defendants and Respondents.

OPINION

**KAUFMAN, J.**—The trial court gave judgment for specific performance in favor of Thomas E. and Joan M. Fogarty, hereafter plaintiffs or buyers, and against Maria T. Saathoff also known as Maria T. Swiskoski, hereafter defendant or seller, in respect to an agreement for the purchase and sale of a condominium.[1] Defendant appeals.

*Facts*

On July 30, 1978, the parties executed a purchase contract and deposit receipt for the purchase and sale of the property. The contract contained a provision for a 21-day escrow and provided that time was of the essence. It further provided that all modifications or extensions should be in writing signed by the parties.

Apparently the reason for the specification of the rather short escrow period was that the seller had entered into an agreement for the purchase of another property in respect to which escrow had already been opened. However, there was no reference to the seller's other transaction in either the purchase contract or the escrow instructions discussed below.

On July 31, 1978, an escrow was opened and escrow instructions were executed by both parties. In accordance with the purchase contract, the instructions called for a selling price of $29,000 to be paid by an immediate deposit in escrow of $250 and a further deposit of $28,750 before the close of escrow which was specified to be August 15, 1978. However, the escrow instructions also included the not uncommon provision: "In the event that the conditions of this escrow have not

---

[1]The record indicates that the buyers did not intend to occupy the condominium and, apparently, intended to purchase the property as an investment.

been complied with at the expiration of the time provided for herein, you are instructed, nevertheless to complete the same at any time thereafter as soon as the conditions (except as to time) have been complied with unless any of us shall have made written demand upon you for the return of money or documents deposited by him."

It was contemplated that the buyers would raise a substantial portion of the purchase price by a loan secured by a first deed of trust on the property, and the instructions provided: "The consummation of this escrow is contingent upon the buyer obtaining a conventional loan; notification by the lender of said loan approval will eliminate this contingency."

The instructions also provided: "The seller will deposit a Standard Structural Pest Control Inspection Report, together with certification that subject property is free of evidence of active infestation, infection, or adverse conditions. The seller will pay for said report and repairs, if any, to comply with lender's requirements."

Two hundred fifty dollars was deposited into escrow on behalf of the buyers, and the seller deposited a duly executed and acknowledged grant deed. No other moneys or instruments were deposited into escrow by either party.

In early August the buyers applied for a first trust deed loan to Bank of America. Their credit was approved by the bank, but no commitment was issued, nor was any notice of approval by the bank of the requested loan deposited in escrow.

Apparently because Bank of America had indicated that in no event would it loan more than 80 percent of the appraised value of the property, the buyers had applied for a loan of $8,800 from American Security Bank with which to pay the balance of the purchase price, the "down payment." The trial court found that the buyer's application for the supplementary loan from American Security Bank was approved. However, there was no evidence that any notice of such loan approval was ever deposited into escrow.

On August 22, 1978, a week after the date specified in the instructions for close of escrow, seller gave a written notice of cancellation to the escrow holder. The following day, August 23, a representative of

Bank of America communicated with seller's agent about a convenient time for an appraisal inspection. The bank's representative was informed by seller's agent that seller had cancelled the escrow and it would be of no use to appraise the property.

The trial court found the purchase contract just and reasonable and the consideration adequate. It also found that the buyers had the financial ability to complete the transaction within a reasonable time of August 15, 1978; that the loans were held up due to a lack of real estate appraisal by the Bank of America which had a backlog of property to appraise and was running about two weeks behind; and that the fact that the property was never appraised for loan purposes was "through no fault of the Plaintiffs."

Crucially, the court also found that on August 22, 1978, when seller purported to cancel the escrow, she had not deposited into escrow either the termite report or the policy of title insurance called for in the purchase contract and escrow instructions and that seller's attempt to cancel the escrow constituted an anticipatory breach of the contract. The bridge between these two findings is the court's conclusion of law that plaintiffs' "performance was not a condition precedent to [d]efendant's performance, and therefore the performance of each party was concurrently conditional on performance by the other." In other words seller's obligation to provide a termite clearance and policy of title insurance was a condition concurrent with buyers' obligations to give notice of the bank's approval of its loan and to deposit the balance of the purchase price (hereafter the concurrent condition finding).

Finally, the court found that the reason seller gave notice of termination of the escrow on August 22 was marital difficulties between her and her then husband[2] and that "[i]n view of [d]efendant's cancellation of [the] escrow . . . a reasonable time for closing the subject escrow was 30 days from and after August 15, 1978."

## Discussion of Contentions

Seller advances numerous contentions on appeal. ■ We have concluded the contention that the court erred in its concurrent condition

---

[2]Simultaneously with cancelling this escrow, seller cancelled the escrow in which she was purchasing another property.

finding is meritorious, fatal to the judgment and dispositive of the appeal and the case. It is unnecessary therefore for us to consider seller's other contentions except insofar as they are involved in the dispositive issue.

The significance of the trial court's concurrent condition finding is the rule of law that "[b]efore any party to an obligation can require another party to perform any act under it, he must ... be able and offer to fulfill all conditions concurrent so imposed upon him on the like fulfillment by the other party, ..." (Civ. Code, § 1439; *Kossler* v. *Palm Springs Developments, Ltd.* (1980) 101 Cal.App.3d 88, 99 [161 Cal. Rptr. 423]; *Weneda Corp.* v. *Dispalatro* (1964) 225 Cal.App.2d 187, 192 [37 Cal.Rptr. 267]; *Diamond* v. *Huenergardt* (1959) 175 Cal.App. 2d 214, 220 [346 P.2d 37]; *Katemis* v. *Westerlind* (1953) 120 Cal. App.2d 537, 546 [261 P.2d 553].) Thus, it is said that "'[n]either party to such a contract [in which the obligations of the parties constitute concurrent conditions] can place the other in default unless he is able to perform or tender performance.'" (*Weneda Corp.* v. *Dispalatro, supra*, 225 Cal.App.2d at p. 192, quoting from *Brant* v. *Bigler* (1949) 92 Cal. App.2d 730, 733 [208 P.2d 47]; accord: *Kossler* v. *Palm Springs Developments, Ltd., supra*, 101 Cal.App.3d 88.)

This was the basis for the trial court's determination that the seller's notice of cancellation of the escrow on August 22 constituted, "under the circumstances," an anticipatory breach of the contract. However, the trial court was mistaken in characterizing the obligations of the parties as being concurrently conditional.

There are, of course, numerous cases holding or indicating that in respect to an escrow to effectuate a purchase and sale of real property the duty of the seller to deposit necessary instruments and the duty of the buyer to deposit the necessary funds are concurrently conditional. (*Kossler* v. *Palm Springs Developments, Ltd., supra*, 101 Cal.App.3d at p. 98; *Weneda Corp.* v. *Dispalatro, supra*, 225 Cal.App.2d at pp. 191-192; *Diamond* v. *Huenergardt, supra*, 175 Cal.App.2d at p. 220; *Groobman* v. *Kirk* (1958) 159 Cal.App.2d 117, 123 [323 P.2d 867]; *Katemis* v. *Westerlind, supra*, 120 Cal.App.2d at pp. 545-546.) Perhaps the rule is more accurately stated in *King* v. *Stanley* (1948) 32 Cal.2d 584, 590 [197 P.2d 321]: "In a contract for the sale of real estate the *delivery of the deed* and the payment of the purchase price are dependent and concurrent conditions [citations]." (Italics added; accord:

*Alfinito* v. *Sater* (1966) 246 Cal.App.2d 362, 383 [54 Cal.Rptr. 636]; see also *Greenstone* v. *Claretian Theo. Seminary* (1959) 173 Cal.App. 2d 21, 33 [343 P.2d 161] (disapproved on another point in *Ellis* v. *Mihelis* (1963) 60 Cal.2d 206, 221 [32 Cal.Rptr. 415, 384 P.2d 7]).) Here, of course, the seller deposited a duly executed and acknowledged grant deed into escrow long before her cancellation of the escrow on August 22. In any event, seller's obligation to furnish a policy of title insurance and to provide a termite clearance were not conditions concurrent with the buyers' obligations in this case.

Civil Code section 1437 provides: "Conditions concurrent are those which are mutually dependent, *and are to be performed at the same time.*" (Italics added.) (See also *Katemis* v. *Westerlind, supra,* 120 Cal.App.2d at pp. 545-546.) Here the seller's obligations to furnish title insurance and the termite clearance were not to be performed at the same time as certain of the buyers' obligations were to be performed.

There was no evidence whatever that there was any imperfection in the seller's title, and the actual delivery of title insurance could not possibly take place until after the recordation of the deed, for the policy of title insurance contracted for was not a policy insuring the seller's title but rather the buyers' title, and no such policy could be delivered until title to the property was transferred to the buyers. (Cf. *Watts* v. *Mohr* (1948) 86 Cal.App.2d 256, 261 [194 P.2d 758].)

Seller's obligation to provide a termite clearance may be said to have been required within "the same period of time" as buyers' obligation to deposit the balance of the purchase price (see *Katemis* v. *Westerlind, supra,* 120 Cal.App.2d at p. 546), and except for one or perhaps two specific provisions in the escrow instructions, it might be that that obligation of seller would have constituted a concurrent condition. However, in view of the contractual provisions, there can be no question but that it was not in this case.

One of the provisions to which we have reference is a part of the overall provision imposing upon the seller the obligation of furnishing a termite clearance. It reads: "The seller will pay for said report and repairs, if any, to comply with lender's requirements." Of course, the proposed lender did not inspect the property prior to cancellation of the escrow nor did it give any indication of what its requirements in this respect might be.

More importantly, the other provision to which we refer is that reading: "The consummation of this escrow is contingent upon the buyer obtaining a conventional loan; notification by the lender of said loan approval will eliminate this contingency." While the evidence showed that the buyers' credit had been approved, there was no competent evidence that the Bank of America would loan the money on the security of this particular condominium, nor is there any competent evidence that the Bank of America ever made a binding loan commitment, and no notice of the lender's approval of a loan was ever deposited into escrow by or on behalf of the buyers. In other words, the contingency was never removed. To hold that the obligation of the seller to furnish a termite report and clearance before the buyers had solidified the deal by eliminating the contingency would not accord with commercial reality. In the absence of an express provision to the contrary, it would be unreasonable to expect or require a seller to incur the expense of a termite inspection and report while the transaction was still contingent upon the buyer's obtaining a loan commitment for the great bulk of the purchase price. It must be concluded that the removal of the contingency by depositing into escrow a notice of the lender's approval of the loan application was a condition precedent to the seller's obligation to obtain a termite inspection and report. (Civ. Code, § 1436;[3] cf. *Britschgi* v. *McCall* (1953) 41 Cal.2d 138, 143 [257 P.2d 977].)

Thus, there was no impediment to seller's cancelling the escrow on August 22, 1978, and the trial court's finding that that constituted an anticipatory breach of the contract is contrary to law. The escrow instructions expressly gave either party the right to cancel the escrow if the escrow was not in a position to close by August 15, 1978. (*Moss* v. *Minor Properties, Inc.* (1968) 262 Cal.App.2d 847, 853 [69 Cal.Rptr. 341]; *Leiter* v. *Handelsman* (1954) 125 Cal.App.2d 243, 251 [270 P.2d 563]; *Weaver* v. *Casad* (1948) 86 Cal.App.2d 593, 595 [195 P.2d 81].) The court's finding that seller's reason for cancelling the escrow was marital difficulties between her and her then husband is immaterial. The court's finding that a reasonable time for the buyers to perform was 30 days from and after August 15, 1978, is of no consequence, because the escrow was cancelled according to its express terms by the seller on August 22, 1978.

---

[3]Civil Code section 1436 reads: "A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed."

The judgment is reversed with directions to the trial court to enter judgment for the seller.

Morris, Acting P. J., and Tamura, J.,* concurred.

A petition for a rehearing was denied March 3, 1982, and respondents' petition for a hearing by the Supreme Court was denied April 22, 1982.

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.