[Civ. No. 67957. Second Dist., Div. Seven. Apr. 17, 1984.]

JAMES HENRY et al., Plaintiffs and Respondents, v.
SATANAND SHARMA, Defendant and Appellant.

**COUNSEL**

Gerald Goldfarb for Defendant and Appellant.

Matt E. Grossman for Plaintiffs and Respondents.

**OPINION**

**JOHNSON, J.**—The trial court gave judgment for specific performance in favor of plaintiffs James and Gloria Henry, hereafter "buyers," against defendant Satanand Sharma, hereafter "seller," to enforce an agreement for

the purchase and sale of a house. Seller appeals and raises two issues: was the agreement sufficiently certain as to the time for buyers' payment and were buyers able to make payment at the time payment was due? We affirm on grounds that the law will imply a reasonable time for performance under the circumstances of this case, and there was sufficient evidence from which the trial court could conclude the buyers were able to pay the purchase price at the time performance was due.

## I. FACTS AND PROCEEDINGS BELOW

On March 1, 1977, the parties executed a contract for the sale of the property. The agreed selling price was $119,000, cash. The contract specified that it was "[s]ubject to buyer obtaining and qualifying for a 1st Trust Deed in the amount of $92,000 for 30 years at no more than 9½%. Interest payments to be approximately $924.95 per month plus 1½ points loan fee . . . ." The loan was to be obtained from Family Savings and Loan which held the existing loan, or the seller would not be responsible for any pay off penalty. As to time for payment, the contract provided that the difference between the purchase price and the funds obtained from the new loan would be paid into escrow "within 30 days or sooner at close of escrow." The contract further provided that "[b]roker is authorized at his discretion to extend all time limits, including escrow time limits, 30 days."

The contract did not specify the time within which an escrow was to be opened or how long the escrow period was to be nor did the contract contain a "time is of the essence" clause.

Within a week after entering into this contract, buyers applied for a loan from Family Savings and Loan. On March 21 the buyers' broker sent a mailgram to the seller stating that Family Savings and Loan would not make a loan on the terms contained in the contract but that another lender would. A few days later seller called the broker, in response to the mailgram, and asked the broker to keep trying to get the Family loan.

In the meantime, on March 4, an escrow was opened and the buyers deposited $3,000. The escrow instructions provided that escrow was to close by April 4 but that the buyers had the option to extend the closing date 30 days. The seller never signed these escrow instructions.

On April 5 the seller sent a mailgram to the escrow officer instructing her to cancel the escrow. The seller concedes that he terminated the parties' contract and never retracted that termination.

It is undisputed that the buyers did not tender payment by March 31, 30 days after the contract was signed, or by April 4, the date specified in the

proposed escrow instructions. The evidence does show that on or about April 11 the buyers received a tentative loan commitment from Family Savings & Loan. The evidence also shows that on May 3 the buyers received a $20,000 loan from another lender to provide the remainder of the cash necessary to purchase the property.

## II. WHERE A REAL ESTATE SALES CONTRACT DOES NOT SPECIFY THE DATES FOR PERFORMANCE, THE LAW WILL IMPLY A REASONABLE TIME.

■ Seller contends that the agreement cannot be specifically enforced because it lacks an essential element: the time for payment by the buyer. (See Civ. Code, § 3390, subd. 5.) As to the essential elements of a real estate sales contract, see *King* v. *Stanley* (1948) 32 Cal.2d 584, 589 [197 P.2d 321].)

It is true the contract does not specify the date by which payment was due but this is not a fatal flaw. "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed . . . ." (Civ. Code, § 1657.) This rule is as applicable to a contract for the sale of real estate as to any other contract. (See, e.g., *Stratton* v. *Tejani* (1982) 139 Cal.App.3d 204, 211 [187 Cal.Rptr. 231]; *Fowler* v. *Ross* (1983) 142 Cal.App.3d 472, 479 [191 Cal.Rptr. 183].)

## III. THERE IS SUBSTANTIAL EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDINGS THAT BUYERS ACQUIRED THE ABILITY TO PAY THE PURCHASE PRICE WITHIN A REASONABLE TIME.

■ Seller contends that he did not breach the contract because at the time he ordered escrow cancelled a reasonable time for the buyers' payment of the purchase price had elapsed. ■ He argues in the alternative that even if he committed an anticipatory breach, buyers are not entitled to specific performance, because they failed to prove they had the ability to pay the purchase price within a reasonable time.

■ It is well settled that a buyer seeking specific performance of a contract for the sale of realty has the burden of proving that he was able to perform his obligations under the contract. ■ Where the action is based on the seller's anticipatory breach, the buyer must still show he was ready and able to perform his side of the bargain at the time his performance came due. (*Am-Cal Investments Co.* v. *Sharlyn Estates, Inc.* (1967) 255 Cal.App.2d 526, 539 [63 Cal.Rptr. 518]; *Fogarty* v. *Saathoff* (1982) 128 Cal.App.3d 780, 787 [180 Cal.Rptr. 484]; *Stratton* v. *Tejani, supra,* 139 Cal.App.3d at p. 211; 4 Corbin, Contracts (1951) § 978, p. 924; Rest.2d Contracts § 254.) Thus, in the case at bar, even if seller is guilty of a breach

of contract, in order to obtain specific performance, buyers must prove they had the ability to pay the purchase price within a reasonable time.

■ What constitutes a "reasonable time" for performance is a question of fact (*Sawday* v. *Vista Irrigation Dist.* (1966) 64 Cal.2d 833, 836 [52 Cal.Rptr. 1, 415 P.2d 816]) as is the question of the buyer's ability to perform. (*Am-Cal Investment Co., supra,* 255 Cal.App.2d at p. 539.)

The trial court found that by the date the complaint was filed, May 3, 1977, the buyers had acquired the ability to pay the contract price for the property but that seller had prevented buyers' performance and had refused to convey the property to buyers. Implicit in this finding is a finding that a reasonable time for buyers' performance extended at least to May 3d.

If there is substantial evidence to support these findings, then, of course, the judgment must be affirmed.

■ In *Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 873-874 [179 Cal.Rptr. 925], the court set forth the test for determining the existence of substantial evidence as follows: "When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record,* there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.*" (Citations omitted; italics in original.)

We begin by examining the record to determine when, if ever, the buyers acquired the ability to perform, i.e., to pay the contract price for the property.

It appears from the contract of sale that the buyers contemplated funds to purchase the property would come from two sources: approximately $20,000 from their own resources and the remainder from an institutional lender in form of a loan secured by a first trust deed.

By March 10, 1977, the buyers had deposited $3,000 into escrow. On May 3rd the buyers obtained a $20,000 loan from Crocker Bank. Buyer James Henry testified without objection that he received oral and written approval of a loan for $94,400 from Family Savings and Loan. (The trial

judge specifically noted he believed the testimony of Mr. Henry.) Although Mr. Henry testified he could not remember when he received those approvals, notes from the seller's broker's file indicate a tentative loan commitment was received on April 11, 1977. These notes were also received into evidence without objection.

 The seller contends the evidence recited above does not prove buyers' ability to perform, because there is no substantial evidence Family Savings and Loan was legally bound by contract to make the $94,400 loan to buyers. Seller relies on the following language from *Am-Cal Investment, supra*, 255 Cal.App.2d at pages 539-540: "A purchaser without funds of his own may show that he was ready and able to pay the purchase price because he had made arrangements to borrow the required funds from a lending institution or from a third party, but if he relies upon the negotiation of a loan from a third party, the buyer must prove . . . [t]hat the third party was legally bound by contract to advance the funds. (*Merzoian* v. *Kludjian* (1920) 183 Cal. 422, 429-43 [191 P. 673].)"

Neither *Am-Cal Investment* nor the case it relies on, *Merzoian* v. *Kludjian*, held that evidence of a binding loan commitment is the exclusive means of proving ability to perform. To the contrary, *Am-Cal Investment* states, "The buyer's financial ability may be proved by showing the purchaser had liquid assets, property which could be sold and the proceeds used as collateral for a loan, or an actual loan commitment . . . ." (255 Cal.App.2d at p. 546.)

*Merzoian* v. *Kludjian, supra*, 183 Cal. 422, was a suit by plaintiff for a commission allegedly earned by securing a purchaser for property which defendants owned and which they had employed plaintiff as agent to sell. The proposed buyer made a written offer to defendants which defendants refused to accept. Defendants' defense to the suit was that the buyer produced by plaintiff did not have the means to pay the purchase price and therefore was not a ready, willing and able buyer. The court held the burden was on plaintiff to establish the proposed buyer "either . . . had the funds in hand, in whole or in part, or that he commanded resources upon which he could obtain the requisite credit." (*Id.*, at p. 430.) It was in this context the court noted the buyer's resources consisted "not of tangible credits, but of unenforceable promises." (*Ibid.*)

We have found no case in which a buyer was denied specific performance solely because he did not possess a legally enforceable agreement with a lender. *Am-Cal Investment* is not such a case. There, the evidence showed one of the buyer's lenders did not have the capacity to make a loan in the amount needed by the borrower (255 Cal.App.2d at p. 542); the other lend-

er had not even been approached about a loan at the time buyer's performance came due (*id.,* at pp. 544-545). In *Cockrill* v. *Boas* (1931) 213 Cal. 490 [2 P.2d 774], the buyer had failed to qualify for a loan by the time performance came due (at p. 492), and in *Fogarty* v. *Saathoff, supra,* 128 Cal.App.3d at page 787, there was no evidence the buyer had obtained even preliminary loan approval at the time performance came due.

Thus, we find no support for the iron-clad rule suggested by seller that plaintiffs could only establish ability to perform by proving they had obtained a legally enforceable loan contract. Rather, the proof needed to show ability depends on all the surrounding circumstances.

Where, as in the case at bar, the seller has committed an anticipatory breach, we see no purpose in requiring the buyers to bind themselves to a loan for which they have no immediate need. Moreover, we question whether a lender would make a firm commitment to loan money for the purchase of property the present owner refuses to sell.

We believe the evidence supports the trial court's finding that the buyers had the ability to pay in the sense that they " 'commanded resources upon which [they] could obtain the requisite credit.' " (*D-K Investment Corp.* v. *Sutter* (1971) 19 Cal.App.3d 537, 546 [96 Cal.Rptr. 830], quoting *Merzoian, supra,* 183 Cal. at p. 430.) Both buyers were employed. They owned a home which they had on the market at the time they contracted to buy the property at issue here. They proceeded to sell that home and realized $26,500 from the sale. In addition, buyers owned a six-unit apartment house and a duplex in Los Angeles. When the deal at issue here fell through, buyers purchased another home on almost identical terms to those in the instant transaction. From this evidence the trial court could reasonably conclude the buyers had the ability to perform their end of the bargain.

Turning to the question whether the buyers could have performed within a "reasonable time," the evidence supports the trial court's implicit finding that performance by May 3 would have been within a reasonable time.

What constitutes reasonable time depends on the situation of the parties, the nature of the transaction and the facts of the particular case. (*Sawday* v. *Vista Irrigation Dist., supra,* 64 Cal.2d at p. 836.) In the case at bar, May 3 was 63 days from the date the contract was signed. We do not believe 63 days is an *un*reasonable time within which to close the sale of residential property particularly where the contract does not make time of the essence and does provide the buyers' broker "is authorized at his discretion to extend all time limits, including escrow time limits, 30 days." Seller argues

there is no evidence the broker ever exercised the right to extend time 30 days. This argument misses the point. The fact the broker had the unfettered power to extend time 30 days is evidence supporting the trial court's determination of what constituted a reasonable time for buyers' performance.

Seller contends now that he needed to close the deal within 30 days because he was attempting to purchase other property. This argument is inconsistent with the terms of the contract which allowed a 30-day extension at the buyers' broker's discretion and the failure to include a time-of-the-essence clause. Moreover, there is no evidence the buyers knew the seller had another deal pending or any necessity for hurry in closing their transaction with seller. (Cf. *Palmquist* v. *Palmquist* (1963) 212 Cal.App.2d 322, 331 [27 Cal.Rptr. 744].)

### DISPOSITION

The judgment is affirmed.

Thompson, Acting P. J., and Pickard, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.