155 F.3d 1126
 98 Cal. Daily Op. Serv. 7211, 98 Daily Journal
D.A.R. 10,003
RESOLUTION TRUST CORPORATION, in its Corporate Capacity,
Plaintiff-Appellee,
v.
FIRST AMERICAN BANK, a California Corporation, Defendant-Appellant.
 No. 97-55168.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 4, 1998.
Decided Sept. 16, 1998.
 
 Martin C. Washton, Gibson, Dunn & Crutcher, Los Angeles, CA, for defendant-appellant.
 Kathryn R. Norcross, F.D.I.C., Washington, DC, for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California; Mariana R. Pfaelzer, District Judge, Presiding. D.C. No. CV-95-07641-MRP.
 Before: HUG, Chief Judge, BOOCHEVER and KOZINSKI, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 First American Bank appeals the district court's summary judgment in favor of the Federal Deposit Insurance Corporation ("FDIC"), in an action by FDIC's predecessor, the Resolution Trust Corporation ("RTC"), to recover $4.1 million, plus interest, which the RTC allegedly paid erroneously to First American pursuant to a Deposit Insurance Transfer and Purchase Agreement. Under that Agreement, First American assumed certain assets and liabilities of a failed savings and loan. Four years after the transaction was executed, the RTC discovered that accounting errors had occurred which resulted in a $4.1 million overpayment to First American.
 
 FACTS
 
 2
 In September 1989, RTC entered into a Deposit Insurance Transfer and Purchase Agreement with First American Bank whereby the latter assumed certain assets and obligations of a failed savings and loan. The $186 million Agreement provided for settlement to occur in January 1990, but permitted adjustments to be made thereafter. Article VII of the Agreement provided:
 
 
 3
 Should additional facts be discovered after the date of this Agreement by the Receiver or the Corporation, which, had such facts been known prior to the execution of this Agreement, would have changed the amount of [transferred funds] ... the Parties agree that any necessary adjustments to such schedules shall be made as soon as possible after the discovery thereof.... Any payments required as a result of any such adjustments subsequent to the Settlement Date shall be made as soon as possible after the Settlement Date.
 
 
 4
 The Agreement also established a formula, based upon Treasury Bill yields, for determining the rate at which interest would accrue on those adjustments.
 
 
 5
 In August 1990, First American's Senior Vice-President Mary Bates wrote to RTC to notify it of a $1.2 million discrepancy. Bates again wrote RTC in November 1990 to memorialize a telephone conversation with an RTC representative and to express her belief that all outstanding issues were concluded.
 
 
 6
 In December 1994, RTC notified First American that it sought approximately $4 million in postsettlement adjustments. These errors were not discovered until June 1994, when the RTC was preparing to terminate the receivership. First American refused payment. In November 1995, RTC sued to recover the adjustments under contract (the Agreement) and under the equitable claim of "money had and received." RTC was terminated by statute and ceased to exist after December 31, 1995, and FDIC was substituted as RTC's successor in interest.
 
 
 7
 On FDIC's motion for summary judgment, the district court entered judgment in favor of RTC and against First American in the amount of $6,869,272.44-including prejudgment interest at ten percent per annum since September 22, 1989-plus ten percent interest on that sum accrued from October 30, 1996. First American appeals from that Order.
 
 DISCUSSION
 I. Timely demand for refund
 
 8
 First American contends that a genuine issue of material fact exists as to whether RTC acted as soon as possible "in identifying and asserting the 'adjustments' that are the subject of [RTC's] Complaint." The Agreement provided that "any necessary adjustments ... shall be made as soon as possible after the discovery thereof," and that "[a]ny payments required as a result of any such adjustments ... shall be made as soon as possible after the Settlement Date." The Agreement did not require RTC to discover errors as soon as possible; it only required that upon discovery, any necessary adjustments, and corresponding payments, be made as soon as possible.
 
 
 9
 First American has not alleged that constructive knowledge by RTC of the errors should be implied or that RTC actually discovered the errors before June 1994, merely that it should have done so. First American does not advance any convincing reason why the contract language should not be read straightforwardly to require actual discovery before there is an obligation to make adjustments "as soon as possible." Nor does First American contend that the six-month delay between June 1994 and December 1994 constitutes either unreasonable delay or a failure to seek adjustments and payments "as soon as possible."
 
 
 10
 First American argues, in the alternative, that if the Agreement was silent as to the time for discovery, under California law a "reasonable time" term should be implied. See Henry v. Sharma, 154 Cal.App.3d 665, 201 Cal.Rptr. 478, 480 (1984) (citing Cal. Civ.Code § 1657) (where no time of performance is fixed, the law implies that a reasonable time is given). First American contends that there is a disputed question of material fact as to whether RTC acted within a reasonable time to discover the errors.
 
 
 11
 However, the Agreement was not silent as to the time for discovery. It included provisions suggesting that the parties contemplated a protracted process. The Agreement explicitly provided for post-settlement adjustments upon discovery of additional facts, and cautioned that descriptions of assets "may not be complete" and schedules "may reflect information that is not correct." The Agreement also provided that "no failure or delay on the part of the Receiver, the Corporation or the Agent to exercise any right, power or privilege under this Agreement will operate as a waiver thereof." Further, the statute of limitations on RTC's action on the Agreement contract is six years.[1] Moreover, the agreement specified that adjustments "be made as soon as possible after the discovery thereof." This express requirement for adjustments, without a similar time requirement for discovery of the need for such adjustments, is an indication that the Agreement gave careful consideration to time requirements, rather than being silent. Under such circumstances, we conclude that the California law implying a "reasonable time" term is inapplicable.
 
 II. Waiver of RTC's rights
 
 12
 First American contends that in a telephone conversation an RTC representative told First American Senior Vice-President Mary Bates that First American should "consider the matter closed," and thereby waived its rights. Bates confirmed her understanding of the telephone conversation by letter on November 1, 1990. The Agreement provides that the RTC may waive rights, powers or privileges, provided that "such waiver shall be in writing ..." (emphasis added), but First American has not produced any writing by RTC that is alleged to constitute a waiver.
 
 III. Prejudgment interest rate
 A. Interest rate
 
 13
 The district court's judgment in favor of RTC and against First American in the amount of $6,869,272.44 included prejudgment interest at ten percent per annum since September 22, 1989 (2,596 days), and postjudgment interest at ten percent per annum on that sum accrued from October 30, 1996.
 
 
 14
 The district court did not cite any authority for its selection of a ten percent rate for prejudgment interest; nor did it indicate that it was exercising discretionary power to fix that rate of interest. California law provides that
 
 
 15
 (a) Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation.(b) If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach.
 
 
 16
 Cal. Civ.Code § 3289(a)-(b). This statutory rate of interest applies only to interest accrued after breach of the contract, and First American was not even arguably in breach until sometime in 1995. Further, the statutory rate does not apply at all to accrued prejudgment interest if a rate was specified in the contract.
 
 
 17
 The Agreement did establish a formula for determining the rate at which interest would accrue on any adjustments:
 
 
 18
 Any net settlement payment hereunder shall bear interest at a rate which shall be adjusted quarterly and which shall be equal to the average equivalent coupon-issue yield on the United State [sic] Treasury's thirteen (13)-week Treasury Bill at the Auction held immediately prior to the beginning of each calendar quarter.
 
 
 19
 Therefore, it was error to substitute the ten percent interest rate for the one specified in the Agreement when calculating prejudgment interest.
 
 
 20
 The district court did not err, however, in using the ten percent rate for post judgment interest. Reid v. Balter, 14 Cal.App.4th 1186, 18 Cal.Rptr.2d 287, 293 (1993) (prevailing plaintiff entitled to contractual rate up to date of judgment).
 
 B. Waiver
 
 21
 FDIC contends that First American waived the issue of whether the district court used the proper interest rate because it failed to raise it below. In its complaint RTC sought recovery of the overpayment, plus interest. RTC's complaint did not seek interest at a ten percent rate, but rather at the Treasury Bill interest rate formula which it quoted from the Agreement. FDIC's memorandum of points and authorities in support of its motion for summary judgment, however, describes amounts owed to include interest at ten percent per annum. In its opposition to FDIC's summary judgment motion, First American did not contest FDIC's use of a ten percent interest rate, and there was no oral argument on FDIC's motion.
 
 
 22
 "Federal appellate courts generally do not consider issues first raised on appeal .... [but] will review an issue for the first time on appeal under certain circumstances, such as when the issue is a legal one, not necessitating additional development of the record, ... or when review will prevent 'manifest injustice.' " Animal Protection Inst. of Am. v. Hodel, 860 F.2d 920, 927 (9th Cir.1988) (citations omitted); Telco Leasing, Inc. v. Transwestern Title Co., 630 F.2d 691, 693 (9th Cir.1980) ("the rule of waiver is one of discretion rather than appellate jurisdiction").
 
 
 23
 The record is sufficient for this court to decide this issue. The question is purely legal: should the district court have applied the interest rate specified in the contract? The answer is "yes," and the only fact that need be developed upon remand in order to recalculate the accrued interest is the "average equivalent coupon-issue yield on the United State[s] Treasury's thirteen (13)-week Treasury Bill at the Auction held immediately prior to the beginning of each calendar quarter." Because the district court is capable of taking judicial notice of posted Treasury Bill rates and performing the necessary calculations, it can resolve the matter of prejudgment interest in summary proceedings.
 
 IV. Money had and received
 
 24
 FDIC contends that if its contract claim fails, it can still recover under an equitable theory. See Stratton v. Hanning, 139 Cal.App.2d 723, 727, 294 P.2d 66, 68 (4th Dist.1956). Because we affirm the district court's summary judgment in favor of FDIC on the contract claim, it is unnecessary to address this equitable claim.
 
 
 25
 Thus, we AFFIRM the district court's summary judgment on FDIC's contract claim, and REVERSE the district court's use of a ten percent statutory prejudgment interest rate instead of the interest rate formula set out in the Agreement. We REMAND for a redetermination of prejudgment interest, applying the contracted-for Treasury Bill formula.
 
 
 
 [1]
 12 U.S.C. § 1821(d)(14)(A) ("Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be ... in the case of any contract claim ... the 6-year period beginning on the date the claim accrues....")