FILED

APR 10 2025

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>TANJILA ISLAM,<br><br>               Debtor. | BAP No. NC-24-1090-FBC<br><br>Bk. No. 22-40278-cn |
| TANJILA ISLAM,<br>            Appellant,<br>v.<br>RICHARD KORAL,<br>            Appellee. | Adv. No. 22-04036-cn<br><br>**MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Charles Novack, Bankruptcy Judge, Presiding

Before: FARIS, BRAND, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

Appellant Tanjila Islam and her company borrowed money from appellee Richard Koral to purchase and resell certain goods. Ms. Islam and her company promised that they would not transfer the goods without

---

<sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Mr. Koral's consent and before the buyer paid for the goods. But neither Ms. Islam nor her company repaid Mr. Koral, and the goods were released from the holding warehouse and transported to Mexico without Mr. Koral's consent. After Mr. Koral obtained a federal court judgment against Ms. Islam, she filed for chapter 7[1] bankruptcy protection.

Mr. Koral sought a determination that the debt Ms. Islam owed to him was nondischargeable under § 523(a)(2)(A). After a two-day trial, the bankruptcy court found that Ms. Islam never intended to keep her promise that her company would not release the goods before receiving payment or obtaining Mr. Koral's approval. It entered judgment against Ms. Islam for the remaining federal court judgment and awarded prejudgment interest. Ms. Islam appeals that judgment.

We AFFIRM the bankruptcy court's determination that the debt was nondischargeable under § 523(a)(2)(A). However, we VACATE the bankruptcy court's award of prejudgment interest and REMAND for the bankruptcy court to enter a judgment consistent with our calculations explained herein.

## FACTS

### A. The loan agreement and loss of the goods

Ms. Islam, through her company, TigerTrade Services, Inc.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

("TigerTrade"), was in the business of buying and selling "off-price" goods on the secondary market. This generally involved purchasing clothing from manufacturers and reselling them to discount retailers abroad.

In August 2017, Ms. Islam approached Mr. Koral, a successful businessman in the off-price market, to finance TigerTrade's purchase of apparel in Poland (the "Goods") that would be shipped to a bonded warehouse in Laredo, Texas, before being sold to Mexican buyers. She represented to Mr. Koral that she had a "long-time buyer" of off-price goods in Mexico: Jalvan, S.A.

In September 2017, Ms. Islam (on behalf of TigerTrade) and Mr. Koral executed a "Secured Promissory Note & Security Agreement" (the "Agreement"). Mr. Koral agreed to loan TigerTrade up to €421,759 to finance the purchase of the Goods. TigerTrade granted Mr. Koral a security interest in the Goods and promised to repay the principal amount plus a transaction fee of €42,175.90 by December 31, 2017. The Agreement provided that "[i]nterest shall start to accrue on the Principle [sic] Amount at ten percent (10.0%) per annum if payment of the Principle [sic] Amount and Transaction Fee is not made on or before the Maturity Date."

The Agreement further provided that TigerTrade would provide Mr. Koral with "any instrument evidencing [TigerTrade] property, and all other instruments and items of Collateral for which possession is required for perfection" and that Tiger trade would not, "without [Mr. Koral's] written consent, exchange, lease, lend, use, sell or dispose of the [Goods] or

[TigerTrade's] rights therein."

Ms. Islam contemporaneously executed an "Unconditional Guaranty" and "irrevocably, absolutely, and unconditionally guarantee[d] to [Mr. Koral] the prompt and complete payment and performance [of TigerTrade's debt] when due . . . ."

TigerTrade never delivered the bills of lading covering the Goods to Mr. Koral. The Goods arrived at the Texas warehouse in mid-November 2017. At some point, they were removed from the warehouse and ended up in Jalvan's possession in Mexico.

TigerTrade did not repay Mr. Koral when the loan was due. Ms. Islam initially claimed that Jalvan reneged on the agreement to buy the Goods. She offered to sell the Goods and other apparel to other buyers, or to deliver the other apparel to Mr. Koral, in payment of the debt.

In April 2018, Mr. Koral arranged for a potential buyer to inspect the Goods in the bonded warehouse. Ms. Islam admitted for the first time that the Goods were in Mexico with Jalvan, not in the Texas warehouse.

## B. Prepetition litigation

In February 2019, Mr. Koral sued Ms. Islam and TigerTrade for nonpayment under the Agreement in federal district court. He obtained a default judgment against them on September 9, 2019. The district court determined that Ms. Islam and TigerTrade were jointly and severally liable to Mr. Koral for $654,713.15: $506,026.45 for the original loan amount, $46,524.24 for the transaction fee, $85,539.27 in interest, and $16,623.19 in

4

attorneys' fees. The district court also awarded Mr. Koral post-judgment interest at the statutory rate.

Thereafter, Mr. Koral took steps to execute on the judgment. Ms. Islam paid $272,032.24 toward the judgment.

## C.     The bankruptcy case and adversary proceeding

Ms. Islam filed a chapter 7 petition on March 24, 2022. She scheduled as an unsecured debt a "business loan" in favor of Mr. Koral for $592,579.33.

Mr. Koral filed an adversary complaint against Ms. Islam, asserting that the judgment debt (then totaling $658,298.64) was nondischargeable under § 523(a)(2), (4), and (6). As to the § 523(a)(2) claim, Mr. Koral asserted that Ms. Islam had promised that TigerTrade would purchase the Goods and sell them to specific buyers; that it would not release the Goods to any buyer until it had received payment in full; that it would provide Mr. Koral with bills of lading and related shipping documentation; and that TigerTrade would not sell, use, or dispose of the Goods without Mr. Koral's written consent. He alleged that Ms. Islam had executed a written guaranty to induce him to loan the principal sum to TigerTrade and promised to satisfy TigerTrade's obligations under the promissory note, but she had no intention to honor the guaranty.

The parties filed competing motions for summary judgment. The bankruptcy court granted Ms. Islam's motion as to the § 523(a)(4) claim and denied Mr. Koral's motion.

5

**D. Trial**

The bankruptcy court held a two-day trial on the remaining nondischargeability claims. Both Mr. Koral and Ms. Islam testified as to their understanding of the Agreement and their competing versions of events. Ms. Islam sought to offer as a rebuttal witness an expert witness who would opine on the value of the other apparel offered in repayment of the debt as an affirmative defense. The bankruptcy court excluded such testimony because the proposed testimony was not relevant and Ms. Islam did not timely disclose the witness or submit a Rule 7026(a)(2)(B) report. The bankruptcy court also excluded the testimony because it should have been included as part of the defense's case-in-chief and not withheld until rebuttal.

**E. Post-trial proceedings and judgment**

The bankruptcy court entered an order determining that the judgment debt was nondischargeable under § 523(a)(2)(A).[2] It found that Ms. Islam "misrepresented that TigerTrade would not release the Goods without payment, she knew that this was a false statement, and she made it to obtain the funds from [Mr.] Koral. [Mr.] Koral relied on her representation, and the Default Judgment represents his damages." It further found that Jalvan had not agreed to prepay for the Goods and that the evidence showed that Ms. Islam intended to release the Goods shortly

---

[2] The bankruptcy court held that Mr. Koral had not satisfied the elements of his § 523(a)(6) claim. Mr. Koral does not appeal that decision.

6

after they arrived at the Texas warehouse whether or not Mr. Koral consented. The bankruptcy court found not credible Ms. Islam's testimony that she did not authorize the release of the Goods. It explained at length why her testimony was not believable and noted that she had provided no evidence to corroborate her version of events.

Mr. Koral lodged a proposed judgment awarding $382,680.91 plus pre- and postjudgment interest (the amount of which was unstated) pursuant to California law. The bankruptcy court did not sign the proposed judgment and instead instructed Mr. Koral to include in the proposed judgment an "ascertainable" and "specific" figure for prejudgment interest using the federal interest rate.

Mr. Koral submitted a supplemental brief and revised proposed judgment. He argued that the applicable prejudgment interest rate was 5.24 percent per annum and that the prejudgment interest totaled $104,275.31. His counsel's declaration referenced a spreadsheet calculating the prejudgment interest from September 9, 2019 (the date of the district court judgment) through November 17, 2023 (submission of the revised proposed judgment) based on information obtained online from a commercial website.

Ms. Islam objected, arguing that the court should use the August 29, 2019 interest rate listed on the Treasury Department's website, which was between 1.71 percent and 1.91 percent. She also contended that the transaction fee did not accrue interest at the contract rate of ten percent

under the Agreement.

Mr. Koral filed a reply brief. He maintained that the applicable interest rate was the one in effect on the anticipated date of the bankruptcy court's judgment (February 2, 2024), not the earlier district court judgment. He argued that he was entitled to prejudgment interest at the federal rate of 4.76 percent (which was a correction from his prior figure). As a result, he requested $99,808.68 in prejudgment interest. His counsel attached a revised spreadsheet in support of that calculation, which for unexplained reasons included interest at 4.8 percent, not the 4.76 percent rate that he claimed was correct. The spreadsheet indicated that the judgment should be for $382,680.91 in principal (the original principal amount of the district court judgment minus Ms. Islam's payments) plus $99,608.68 in interest through February 2, 2024.

The bankruptcy court entered judgment against Ms. Islam for $571,159.03, which consisted of $382,680.91 in principal, $76,536.17 in attorneys' fees, and $111,941.95 in prejudgment interest running from September 9, 2019 through May 13, 2024.[3]

Ms. Islam filed a motion to correct the judgment. She argued that the transaction fee was not subject to postjudgment interest. She also offered a principal calculation that slightly differed from the court's judgment. She contended that the interest rate should be 1.7 percent and posited that

---

[3] The court's calculation of interest appears to adopt Mr. Koral's calculation, except the court calculated interest through a later date.

Mr. Koral used incorrect information to calculate interest. She calculated that prejudgment interest totaled only $25,428.67. The bankruptcy court did not set the matter for hearing or dispose of the motion.

Ms. Islam timely appealed from the nondischargeability judgment.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Whether the bankruptcy court erred in holding that Ms. Islam's debt to Mr. Koral was nondischargeable under § 523(a)(2)(A).

2. Whether the bankruptcy court erred in denying Ms. Islam's request to present expert testimony on the value of the other apparel that she offered as repayment.

3. Whether the bankruptcy court erred in awarding prejudgment interest.

## STANDARDS OF REVIEW

The question of dischargeability of a debt is a mixed question of fact and law that this Panel reviews de novo. *See Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004); *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002) ("Whether a claim is nondischargeable presents mixed issues of law and fact and is reviewed de novo."). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

9

Intent to defraud in the context of a dischargeability proceeding is a question of fact. *Deitz v. Ford (In re Deitz)*, 469 B.R. 11, 24-25 (9th Cir. BAP 2012), *aff'd*, 760 F.3d 1038 (9th Cir. 2014). We review such factual findings for clear error. *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir. 1997) (en banc). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

We review the bankruptcy court's decision to exclude an expert witness for an abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997). We review the bankruptcy court's award of prejudgment interest under the same standard. *Acequia, Inc. v. Clinton* (*In re Acequia, Inc.*), 34 F.3d 800, 818 (9th Cir. 1994). Where the bankruptcy court's analysis involves a statutory interpretation of 28 U.S.C. § 1961, our review is de novo. *AT&T Co. v. United Comp. Sys., Inc.*, 98 F.3d 1206, 1209 (9th Cir. 1996).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.    The bankruptcy court did not err in determining that Ms. Islam's debt to Mr. Koral is nondischargeable under § 523(a)(2)(A).**

Section 523(a)(2)(A) excepts from discharge debts "to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." One species of fraud is called "promissory fraud." "Since a promise necessarily carries with it the implied assertion of an intention to perform it follows that a promise made without such an intention is fraudulent and actionable in deceit . . . ." Restatement (Second) of Torts § 530(1) cmt. c (Am. L. Inst. 1976). The Ninth Circuit has held that "a promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A)." *Rubin v. West* (*In re Rubin*), 875 F.2d 755, 759 (9th Cir. 1989).

The bankruptcy court found that Ms. Islam made a promise that she did not intend to keep. She promised that she would not release the Goods without Mr. Koral's consent and without first receiving payment from the buyer. But the court found that she did not intend to keep this promise: it recounted Ms. Islam's turbulent history with Jalvan and found that "she knew trouble was brewing close to when the parties executed the [Agreement]." Additionally, just a few weeks after she signed the Agreement, she delivered the bills of lading to Jalvan and released the Goods without Mr. Koral's permission. Specifically, it found that:

> [Ms.] Islam provided no evidence that [Jalvan] had agreed to

11

pay for the Goods upfront, and [Ms.] Islam's instruction to her employee to provide a Telex Release to [the bonded warehouse] only a few weeks after she borrowed the funds indicate that she intended to promptly release the Goods to [Jalvan] after their arrival in Laredo. Had she intended differently, she would have introduced some fiery evidence demanding explanations from [Jalvan] and [the bonded warehouse]. No such evidence was introduced.

In other words, because she breached the Agreement so soon after she signed it, the court inferred that she never intended to keep her promise. This factual finding was not clearly erroneous.

Ms. Islam asserts that the promissory note did not contain a promise to obtain Mr. Koral's permission before releasing the Goods or a promise not to release the Goods without receiving payment from Jalvan. The plain language of the Agreement gives the lie to this argument: "[TigerTrade] will not, without [Mr. Koral's] written consent, exchange, lease, lend, use, sell or dispose of the Collateral or [TigerTrade's] rights therein."

Ms. Islam also argues on appeal that she would sometimes let Jalvan process goods without requiring prepayment and faults the bankruptcy court for precluding evidence on this point. But this evidence was beside the point; TigerTrade's course of dealing with Jalvan cannot modify the plain language of TigerTrade's Agreement with Mr. Koral.[4]

---

[4] Ms. Islam's other challenges to the bankruptcy court's findings are unpersuasive. She argues that the Agreement did not contain a promise to "immediately repay" Mr. Koral. This argument is also beside the point. TigerTrade had no right to part with the Goods without Mr. Koral's consent. Additionally, Ms. Islam

Ms. Islam argues that the bankruptcy court's ruling is contradictory, because it also found that she did not have "willful and malicious" intent under § 523(a)(6) because she intended to repay the promissory note. But these findings are not contradictory: Ms. Islam could have intended to release the Goods to Jalvan immediately despite her promise to Mr. Koral and nevertheless intended to repay Mr. Koral based on a hope that Jalvan would eventually pay her or she would find some other source of funds.

The bankruptcy court found that Mr. Koral relied on Ms. Islam's misrepresentations. This finding is supported by Mr. Koral's trial testimony.

Ms. Islam argues that Mr. Koral never asked her for bills of lading and did not register his security interest in the Goods, apparently implying that he did not rely on these terms when entering into the Agreement. But the bankruptcy court did not clearly err in rejecting Ms. Islam's contradictory arguments about the bills of lading.

Finally, the bankruptcy court found that Mr. Islam sustained damages as a proximate result of the representations, the amount of which was represented by the default judgment. The bankruptcy court did not clearly err in finding that Mr. Koral was damaged in the amount of $506,026.45. He was, as he stated in an email, "left holding the bag" after

---

seems to blame Mr. Koral for not telling her to report the Goods stolen to authorities or insurers. Mr. Koral had no duty to do so, and Ms. Islam's release of the Goods was wrongful no matter what Mr. Koral did or did not do thereafter.

relying on Ms. Islam's representations.

## B. The bankruptcy court did not abuse its discretion by excluding expert witness testimony.

Ms. Islam argues that the bankruptcy court erred by not allowing her expert witness to testify as to the value of the other goods that she and TigerTrade offered to Mr. Koral. The bankruptcy court did not abuse its discretion for three reasons.

First, Ms. Islam's counsel did not disclose the expert witness prior to trial. The bankruptcy court identified the correct rule when it applied Rule 7026(a)(2), which requires a party to disclose the witness "in the sequence the court orders[,]" or ninety days before trial. Ms. Islam did not do that. As a result, Rule 7037(c)(1) bars her from using that expert: "If a party fails to provide information or identify a witness as required by [Civil] Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." The bankruptcy court correctly applied the rule by excluding the expert testimony.[5]

Second, the expert testimony was not relevant because Mr. Koral had no obligation to accept the other goods that she offered as repayment rather than cash.

Third, and perhaps most important, the district court had already

---

[5] Additionally, the court properly excluded the expert as a rebuttal witness, because the argument and testimony were apparently known to Ms. Islam prior to trial.

adjudicated the amount that Ms. Islam owed Mr. Koral. The doctrine of claim preclusion barred Ms. Islam from asserting any defense to the amount of her liability that she asserted or could have asserted in the district court. *See Brown v. Felsen*, 442 U.S. 127, 131 (1979) (Claim preclusion "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."); *Gray v. La Salle Bank, N.A.*, 95 Cal. App. 5th 932, 949 (2023) ("Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. If claim preclusion is established, it operates to bar relitigation of the claim altogether." (cleaned up)), *as modified on denial of reh'g* (Sept. 27, 2023), *review denied* (Dec. 13, 2023).

## C.      The bankruptcy court erred in awarding prejudgment interest.

Ms. Islam contends that the bankruptcy court selected an incorrect prejudgment interest rate. We agree.[6]

---

[6] Ms. Islam did not raise the prejudgment interest argument in the body of her opening brief. Instead, she incorporated by reference her postjudgment motion to correct judgment and attached a copy of that motion to her opening brief. This is insufficient to specifically and distinctively raise this issue in her opening brief; as a result, she normally would have waived this argument. *See Pablo de Pablo v. Garland*, 861 F. App'x 136, 139 (9th Cir. 2021). However, we have discretion to review an unraised issue in certain instances, such as "when it is raised in the appellee's brief" or "if the failure to raise the issue properly did not prejudice the defense of the opposing party." *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992). Mr. Koral adequately addressed the argument in his answering brief, and our consideration of it will not prejudice his defense. We thus will consider her challenge to the bankruptcy court's calculation of

As we have noted, the district court had already entered judgment on Mr. Koral's claims under the Agreement. That judgment awarded Mr. Koral postjudgment interest pursuant to 28 U.S.C. § 1961.[7] The interest rate applicable to judgments entered on that date was 1.72% per annum.[8] The bankruptcy court then entered its own judgment on the same debt, in an amount equal to the district court judgment less Ms. Islam's payments. But the bankruptcy court apparently added prejudgment interest to its judgment at the rate proffered by Mr. Koral as the rate in effect when the

---

prejudgment interest.

[7] 28 U.S.C. § 1961(a) provides:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment.

28 U.S.C. § 1961(a).

[8] Historical interest rates are available on the website of the Board of Governors of the Federal Reserve System. Users may access the Data Download Program to create a package of particular interest rates on specified dates. In this case, the applicable dates are September 3-6, 2019, and the rate is the one-year Treasury constant maturity. *See Data Download Program*, Board of Governors of the Federal Reserve System, https://www.federalreserve.gov/datadownload/Chart.aspx?rel=H15&series=e30653a4b6 27e9d1f2490a0277d9f1ac&lastobs=&from=09/03/2019&to=09/06/2019&filetype=csv&label =include&layout=seriescolumn&pp=Download (last visited Apr. 1, 2025). We take judicial notice of this data. *See* Fed. R. Evid. 201 (allowing court to take judicial notice of "a fact that is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Resol. Tr. Corp. v. First Am. Bank*, 155 F.3d 1126, 1129 (9th Cir. 1998) (stating that the district court may take judicial notice of the posted Treasury Bill rates on remand).

bankruptcy court entered its judgment, which was 4.8%.

As a result, there are two judgments on the same debt and in the same original principal amount, but bearing interest at two different rates during the same time period (from the entry of the district court's judgment until the entry of the bankruptcy court's judgment). Alternatively, one could say that the bankruptcy court retroactively increased the rate at which the district court's judgment bore interest. But neither the court nor the parties explained how either of those results could be correct.

The bankruptcy court undoubtedly had power to enter a money judgment, even though the district court previously entered judgment on the same debt. *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 875 (9th Cir. 2005). But bankruptcy courts are not obligated to enter a money judgment, and "[t]he existence of a prior judgment may introduce some prudential concerns, such as comity, that a bankruptcy court should take into consideration in fashioning relief." *Id.* at 874.[9]

---

[9] In *Gertsch v. Johnson & Johnson Finance Corp. (In re Gertsch)*, 237 B.R. 160, 172 (9th Cir. BAP 1999), this Panel held that, "[w]here the debt at issue has been reduced to judgment, the bankruptcy court's judgment in a nondischargeability action should merely declare the prior judgment nondischargeable (or not) in whole or in part." The Panel took this idea one step further in *Smith v. Lachter (In re Smith)*, 242 B.R. 694, 703 (9th Cir. BAP 1999), where we held that the bankruptcy court "is without authority" to enter a money judgment in such a situation. In *Sasson*, the Ninth Circuit held that the bankruptcy court has "jurisdiction and authority" to enter such a money judgment, 424 F.3d at 876, but acknowledged that, when the bankruptcy court decides whether to enter its own money judgment, it should take into account "prudential considerations," such as the "confusion and complication caused by the entry of multiple judgments[,]"

In this case, the bankruptcy court's inclusion of prejudgment interest created an inconsistency between its judgment and the district court's prior judgment. We hold that the bankruptcy court abused its discretion when it included prejudgment interest in its judgment at the rate applicable to its judgment, rather than postjudgment interest at the rate applicable to the district court's judgment.[10]

Based on the record, we are able to calculate the correct amount of the money judgment. The parties did not dispute the date and amount of the district court judgment and Ms. Islam's payments; we can take judicial notice of the relevant interest rate; and the statute provides the method of computing interest. Our calculations are set forth in the appendix to this decision. Accordingly, we will vacate the monetary portion of the bankruptcy court's judgment and remand with directions to enter a nondischargeable money judgment in the amount of $421,682.96, plus attorneys' fees in the amount of $76,536.17 and postjudgment interest at

---

*id.* at 874, 875.

[10] Ms. Islam also argues that it was error to accrue prejudgment interest on the portion of the debt consisting of the Transaction Fee. The language of the Agreement supports this argument: "Interest shall start to accrue on the Principle [sic] Amount at ten percent (10.0%) per annum if payment of the Principle Amount and Transaction Fee is not made on or before the Maturity Date." But we need not consider this question because the district court made it clear that it was not awarding prejudgment interest on the Transaction Fee, and the bankruptcy court should only have entered a nondischargeability judgment on the preexisting district court judgment. Under 28 U.S.C. § 1961(a), postjudgment interest accrues on the entire amount of the district court's judgment regardless of its composition.

5.13% per annum from May 13, 2024 (the date on which the bankruptcy court entered its original judgment).

## CONCLUSION

The bankruptcy court did not err in ruling that the judgment debt was nondischargeable under § 523(a)(2)(A) or excluding Ms. Islam's proffered expert witness. However, we hold that the bankruptcy court erred in entering a new money judgment with an incorrect calculation of prejudgment interest on the preexisting district court judgment. Accordingly, we AFFIRM IN PART and VACATE AND REMAND IN PART with directions to the bankruptcy court to enter a nondischargeable money judgment for $421,682.96 plus attorneys' fees of $76,536.17 and statutory postjudgment interest.

# Appendix

The district court entered judgment on September 9, 2019, for $654,713.15. That judgment bore postjudgment interest at 1.72% per annum, which equals $11,261.07 per year or $30.85 per day. (All dollar amounts are rounded to the nearest penny.)

Pursuant to 28 U.S.C. § 1961(b), interest is compounded annually. Therefore, on the first anniversary of the judgment (September 9, 2020), the principal balance increased by $11,261.07 to $665,974.22, and interest accrued thereafter at $31.38 per day.

On February 5, 2021, Ms. Islam paid $152,022.30. This payment satisfied the interest accrued to that date ($31.38 per day x 149 days = $4,675.62). The remainder of the payment ($152,022.30 - $4,675.62 = $147,346.68) reduced the principal balance to $518,627.54. Interest accrued thereafter at $24.44 per day.

On February 26, 2021, Ms. Islam paid $105,000.00. This payment satisfied the interest accrued to that date ($24.44 per day x 21 days = $513.24). The remainder of the payment ($105,000.00 - $513.24 = $104,486.76) reduced the principal balance to $414,140.78. Interest accrued thereafter at $19.52 per day.

On March 25, 2021, Ms. Islam paid $9.94. This payment satisfied a portion of the interest accrued to that date ($19.52 per day x 27 days = $527.04) but did not reduce the principal balance or the daily accrual of interest thereafter.

On April 1, 2021, Ms. Islam paid $5,000.00. This payment satisfied the interest accrued to that date ($527.04 – $9.94 + ($19.52 per day x 7 days) = $653.74). The remainder of the payment ($5,000.00 - $653.74 = $4,346.26) reduced the amount owed to $409,794.52. Interest accrued thereafter at $19.31 per day.

On April 29, 2021, Ms. Islam paid $5,000.00. This payment satisfied the interest accrued to that date ($19.31 per day x 28 days = $540.68). The remainder of the payment ($5,000.00 – $540.68 = $4,459.32) reduced the amount owed to $405,335.20. Interest accrued thereafter at $19.10 per day.

On June 1, 2021, Ms. Islam paid $5,000.00. This payment satisfied the interest accrued to that date ($19.10 per day x 33 days = $630.30). The remainder of the payment ($5,000.00 - $630.30 = $4,369.70) reduced the amount owed to $400,965.50. Interest accrued thereafter at $18.89 per day.

Interest compounded on the second anniversary of the judgment (September 9, 2021). This increased the amount owed to $400,965.50 + ($18.89 per day x 100 days) = $402,854.50. Interest accrued thereafter at $6,929.10 per year.

Interest compounded on the third anniversary of the judgment (September 9, 2022). This increased the amount owed to $402,854.50 + $6,929.10 = $409,783.60. Interest accrued thereafter at $7,048.28 per year.

Interest compounded on the fourth anniversary of the judgment (September 9, 2023). This increased the amount owed to $409,783.60 + $7,048.28 = $416,831.88. Interest accrued thereafter at $7,169.51 per year or $19.64 per day.

The bankruptcy court entered judgment on May 13, 2024. The amount owed on the district court judgment on that date was $416,831.88 + ($19.64 per day x 247 days) = $421,682.96.