Filed 3/29/21  Property Investors 2016 v. Anabo CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PROPERTY INVESTORS 2016, LLC,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>TONY ANABO et al.,<br><br>      Defendants and Respondents. | A158290<br><br><br>(Alameda County<br>Super. Ct. No. RG18904262) |

Plaintiff Property Investors 2016, LLC (PI2016), appeals from a judgment following an order sustaining without leave to amend the demurrers of defendants Tony Anabo (Anabo) and Mansour Ghanbari and Danny Leung (Ghanbari defendants) (collectively, defendants) to PI2016's third amended complaint.  PI2016 sued for specific performance or, alternatively, damages based on allegations that the defendants breached a contract to sell real property to PI2016.  The trial court concluded that PI2016 was not entitled to relief because it failed to allege it had removed certain contingencies, which the court found was a condition precedent to the defendants' performance.  We agree and affirm.

1

## BACKGROUND

### I. *The Purchase Agreement*

On April 3, 2018,[1] Sukpran Gill,[2] who is not a party in this case, and PI2016 submitted a written offer to purchase a home in Oakland owned by Anabo (the Property). The offer was submitted on a standard preprinted form, "California Residential Purchase Agreement and Joint Escrow Instructions (C.A.R. [California Association of Realtors] Form RPA-CA . . . )." (All caps omitted.)

On April 4, Anabo made a counteroffer, which included the following terms: (1) "Buyer is purchasing the property in its As-is Condition"; (2) "Buyers acknowledge that the sale is subject to Bankruptcy Court Approval"; and (3) "Buyer to close escrow within 10 days or fewer days from receiving written evidence of court approval or confirmation of Bankruptcy Sale."

On April 5, PI2016 accepted Anabo's counteroffer. On April 6, Anabo confirmed he personally received a copy of PI2016's signed acceptance of the counteroffer and PI2016 deposited $5,000 into escrow. PI2016's offer and Anabo's counteroffer constitute the integrated purchase agreement (Agreement).

The Agreement defines " 'Acceptance' " as "the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party . . . ." The date of acceptance was thus April 6. The Agreement also contains a "[t]ime is of the essence" provision.

---

[1] All further dates refer to the year 2018 unless otherwise stated.

[2] Gill appears to be an agent of PI2016, as the offer at times refers to Gill and PI2016 as one person or uses their names interchangeably.

In addition, the parties agreed that "the Property is sold (a) 'AS-IS' in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's investigation rights."

The Agreement also contains the following provisions related to an inspection contingency:

"[Paragraph 12] A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. . . . [¶] . . . [¶]

"[Paragraph] 14.  TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:  The following time periods may only be extended, altered, modified or changed by mutual written agreement.  Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing [C.A.R. Form CR or CC].

"A. SELLER HAS:  7 . . . Days After Acceptance to deliver to Buyer all Reports, disclosures and information for which Seller is responsible . . . .

"B. (1) BUYER HAS:  . . . 0 . . . Days After Acceptance . . . to:
(I) complete all Buyer Investigations; review all disclosures, reports . . . , and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property . . . .

"(2) Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property . . . . Seller has no obligation to agree to or respond to . . . Buyer's requests.

"(3) By the end of the time specified in paragraph 14B(1) . . . , Buyer shall deliver to Seller a removal of the applicable contingency or cancellation [C.A.R. Form CR or CC] of this Agreement.  However, if any report, disclosure or information for which Seller is responsible is not Delivered

within the time specified in paragraph 14A, then Buyer has 5 . . . Days After Delivery of any such items, or the time specified in paragraph 14(B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

"(4) Continuation of Contingency: Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (I) remove remaining contingencies, or (II) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

"(5) . . . Buyer shall have access to the Property to conduct inspections and investigations for 17 . . . Days After Acceptance . . . ."

Paragraph 14C provides a box to be checked off next to the term "REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). . . ." That box was not checked off.

Paragraph 14D explains the seller's right to cancel as follows: "(1) . . . If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBR), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, . . ."

Paragraph 14G states, "Before . . . Seller may cancel this Agreement for failure of the other Party to close escrow . . . Seller must first Deliver to the other Party a demand to close escrow. . . . The [demand to close escrow]

4

shall: (I) be signed by the applicable Buyer . . . ; and (II) give the other Party as least 3 . . . Days After Delivery to close escrow."

## II.    ***Events During Escrow***

On April 5, Anabo, as debtor in a proceeding in bankruptcy court (*In re Anabo* (Bankr. N.D.Cal. 2017, No. 17-42839 CN)), filed his "second motion for order authorizing the sale of" the Property to PI2016. (All caps omitted.) The bankruptcy court granted the motion on April 13 and entered the order on its docket on April 16.

On April 24, PI2016 received Anabo's demand to close escrow. Anabo demanded that PI2016 close escrow "[b]y April 26, 2018 . . . , which is at least 3 Days After receipt of this Demand to Close Escrow but no earlier than the agreed upon Close of Escrow date." It further stated that if PI2016 did not close by then, "Seller may . . . immediately cancel the Agreement."

Also on April 24, PI2016 sent Anabo a notice to seller to perform, requesting "[Anabo] to execute all necessary documents required by [escrow company] for transfer of ownership from Tony Anabo to [PI2016]." (Boldface and italics omitted.) The notice further provides, "If you do not take the contractual actions specified above within 2 . . . Days After Delivery . . . of this Notice to Seller to Perform, Buyer may cancel the Agreement." (Boldface omitted.) In addition, paragraph 2 of the notice refers to "Contingencies" and provides boxes that can be marked off next to "Removal of Finding Replacement Property Contingency," "Removal of Close of Replacement Property Contingency," and "Other." (All caps, boldface, and underscoring omitted.) A space is also provided next to "Other." PI2016 did not check off any of the boxes or write any information in the space provided.

On May 1, Anabo filed a third motion in the bankruptcy court for an order approving the sale of the Property to the Ghanbari defendants,

5

explaining that PI2016 "did not fulfill [its] end of the sale agreement" to close escrow by April 27. On May 10, the bankruptcy court granted the motion. On May 17, the grant deed transferring ownership of the Property to the Ghanbari defendants was recorded.

### III. *The Prior Complaints, Demurrers, and Rulings*

On May 10, PI2016 filed a complaint against Anabo for specific performance, intentional misrepresentation, and fraudulent concealment. PI2016 alleged that the listing of the Property represented that it "had a finished basement that had two basement units that were lawful and rented and that the basement units accounted for fifty percent (50%) of the total building square footage . . . estimated to be 2347 square feet." PI2016 sought Anabo's specific performance of conveying the Property "with two lawfully occupied, permitted and code compliant basement units . . . ." As for the fraud-based causes of action, PI2016 alleged that Anabo misrepresented that the Property contained lawful basement units.

On July 26, PI2016 added Ghanbari and Leung as Doe defendants.

On August 9, Anabo filed a demurrer to the complaint, arguing PI2016 failed to allege facts sufficient to state each cause of action. The court sustained the demurrer with leave to amend. It found the complaint failed to allege a breach of contract cause of action giving rise to a right to specific performance because PI2016 did not allege that the Agreement was approved by the bankruptcy court, a condition precedent under the Agreement. The court also found PI2016 failed to allege, with the required specificity, the necessary element of damages to support the other causes of action based in fraud. The court granted Anabo's request for judicial notice of (1) the grant deed transferring title of the Property to the Ghanbari defendants and (2) the

6

bankruptcy court's order granting Anabo's second motion for an order approving the sale of the Property.

On September 24, PI2016 filed the first amended complaint (FAC), adding allegations that PI2016 suffered damages from Anabo's misrepresentations through the loss of investment opportunities in other real properties and inability to recover its deposit in escrow.

The Ghanbari defendants filed an answer to the FAC. Anabo demurred to the FAC on grounds similar to those raised in his demurrer to the original complaint. Anabo asserted that the FAC failed to allege facts showing he caused PI2016's inability to recover its escrow deposit. Anabo further argued that PI2016's allegation it lost real estate investment opportunities was speculative.

The court sustained the demurrer to the FAC with leave to amend. It found the FAC, once again, failed to allege that the bankruptcy court approved the sale, a condition precedent to defendants' performance under the Agreement. The court further concluded that PI2016 failed to allege the elements of its second and third causes of action with any specificity. It also agreed with Anabo that PI2016's alleged loss of investment opportunities was speculative. The court further found there was no allegation that Anabo prevented PI2016 from recovering its escrow deposit.

On December 20, PI2016 filed the second amended complaint (SAC). The SAC added allegations that the bankruptcy court granted Anabo's motion for order authorizing the sale of the Property to PI2016 and attached the order. The SAC also alleged Anabo breached the Agreement, in part, by not granting PI2016 "access to perform the necessary inspections" until April 14 and failing to respond to PI2016's request that Anabo verify the downstairs area was "legal living space" and, if it was not, to repair the space.

"[PI2016] request[ed] that the Defendants specific [*sic*] perform by transferring the subject property to [PI2016] . . . with the downstairs units permitted and code compliant."

The Ghanbari defendants filed an answer to the SAC. Anabo demurred to the SAC. He argued that PI2016 "attempts to redefine an 'As Is' sale, burdening it with warranties. . . . [T]his pleading definition is in contradiction of the actual definition of 'As Is' in the actual [Agreement]," which is based on the "PRESENT physical condition" of the Property. Anabo also maintained PI2016 failed to allege it removed or waived the inspection contingency contained in paragraph 12A of the Agreement.

The court sustained the demurrer with leave to amend as to specific performance. It agreed with Anabo that under the Agreement, the "as is" condition of the Property is based on its condition as of the date of acceptance. The court explained that the listing for the sale of the Property never represented, as PI2016 alleged, that the basement units were lawful, permitted, or code-complaint; the listing merely represented that the basement units existed and were rented to relatives, and expressly noted that the square footage in the listing was likely different from that provided in public records.

The court further concluded, "For Anabo to be obligated to transfer the property to PI2016, PI2016 would have had to waive the contingencies related to repairs that it requested [pursuant to paragraph 14F of the Agreement]. [Citation.] PI2016 does not allege that it has done so." The court nonetheless granted PI2016 leave to amend, finding that it may be able to support its claims with allegations of "further written agreements to repair or a waiver of contingencies . . . ."

8

The court sustained the demurrer as to the remaining causes of action for intentional misrepresentation and fraudulent concealment without leave to amend. It explained that PI2016 still failed to plead the elements of its claims with specificity and cure the defective allegations for damages.

The court granted Anabo's request for judicial notice of its third motion for an order from the bankruptcy court approving the sale of the Property to the Ghanbari defendants and the order granting the motion.

## IV.  *The Operative Third Amended Complaint*

On March 18, 2019, PI2016 filed the operative third amended complaint (TAC) against Anabo and the Ghanbari defendants, alleging a single cause of action for specific performance. In addition to repeating the same allegations contained in the SAC, the TAC alleged that on April 24, 2018, PI2016 both received Anabo's demand to close escrow and sent Anabo a notice to seller to perform. The TAC attached and incorporated by reference both documents, along with the Agreement. The notice to seller to perform requested that Anabo execute all necessary documents required by the escrow company for transfer of ownership of the Property to PI2016.

PI2016 also alleged it "has offered, and continues to offer, to tender the agreed upon purchase price of $840,000 . . . in exchange for title to said real property with 2347 square feet, with two lawfully occupied, permitted and code compliant basement units."

The TAC also included the same allegations of damages concerning PI2016's unreturned escrow deposit and lost business opportunities.

## V.  *The Demurrers to the TAC*

Anabo and the Ghanbari defendants filed separate demurrers to the TAC. In his demurrer, Anabo argued PI2016 failed to cure the defects in the SAC identified by the court concerning the removal of contingencies. Anabo

9

also reiterated that PI2016's alleged damages were speculative or were not caused by Anabo.

In the Ghanbari defendants' demurrer, they argued the TAC was uncertain and failed to allege they had any involvement with the Agreement between PI2016 and Anabo.

PI2016 opposed both demurrers. PI2016 also filed the declaration of its attorney, which attached a copy of a notice of pending action (lis pendens) that was recorded with the Alameda County Clerk-Recorder's Office.[3] In its opposition to the Ghanbari defendants' demurrer, PI2016 argued it could enforce specific performance against them because they had constructive notice of the instant lawsuit and were therefore not bona fide purchasers of the Property.

In its opposition to Anabo's demurrer, PI2016 asserted the TAC alleged facts supporting its breach of contract claim and entitlement to specific performance, arguing that its notice to seller to perform and Anabo's demand to close escrow "establish a written agreement by [PI2016] to waive contingencies."

Anabo replied to the opposition, contending that neither his demand to close escrow nor PI2016's notice to seller to perform "serve[s] to unilaterally amend the contingent purchase agreement, nor do they serve to remove [PI2016's] contingencies, thereby requiring . . . Anabo's performance. Nor is it even alleged in the TAC that these documents would tend to have such an effect. . . ." Anabo maintained, "There is no attachment or allegation anywhere that contingencies were waived, or that [Anabo] accepted [PI2016's] demand for repairs."

---

[3] In part IV of the discussion, *post*, we address the lis pendens attached to PI2016's attorney's declaration.

10

The Ghanbari defendants also replied to PI2016's opposition.  They argued that PI2016 cannot assert specific performance against any of the defendants.  They explained, "If the contract is unenforceable as to Anabo, it cannot be enforced against [them], who had no dealings with [PI2016] at all."

## VI. *The Ruling on the Demurrers to the TAC*

On June 17, 2019, the court, after conducting a hearing, sustained both demurrers to the TAC without leave to amend.  It first recounted that the SAC failed to allege "that the agreement's inspection and repair closing contingencies had been satisfied or waived."  The court then explained, "The TAC attempts to resolve this . . . deficiency by pleading and attaching Anabo's April 24, 2018 Demand to Close Escrow [citation] and PI2016's April 24, 2018 Notice to Seller to Perform [citation]."  The court concluded, "Neither of these forms can reasonably be understood as a waiver of the buyer's right to inspection and repair.  Under both their own terms and the terms of the Agreement, these forms do not purport to remove or waive contingencies:  they are the first steps toward each side cancelling the Agreement for failure of the other to perform."  The court also observed that "the Notice to Seller to Perform is on C.A.R. Form NSP, not the form specified by the Agreement as the form by which the buyer removes contingencies, C.A.R. Form CR."  It added that the allegations of the TAC "show that [PI2016] remains unwilling to waive its requested repairs to the Property to bring its basement units and bathrooms into compliance with the state and local building codes."

The court also sustained the demurrer of the Ghanbari defendants without leave to amend, on the grounds that "PI2016's right to relief against [them] is dependent on its ability to compel specific performance against Anabo . . . ."

11

Finally, the court denied PI2016 leave to amend, noting that "PI2016 has now had four opportunities to plead its case" and that its "opposition papers make no offer of additional facts that might be pleaded to avoid these shortcomings."

On July 8, 2019, the court filed a judgment of dismissal. On September 6, 2019, PI2016 filed its notice of appeal from the judgment.

## DISCUSSION

### I.  *Threshold Issues*

Before we turn to the merits of PI2016's appeal, we address two threshold issues raised by the parties.[4]  First, we disagree with Anabo that PI2016's appeal is untimely.  Anabo argues that the June 17, 2019 order sustaining the demurrers, and not the subsequent judgment filed on July 8, 2019, triggered the 60-day time limit to appeal.  (Cal. Rules of Court, rule 8.104(a)(1)(A).)  Anabo is mistaken.  An order sustaining a demurrer without leave to amend is not appealable; the appeal must be taken from the judgment on such order.  (*O'Grady v. Merchant Exchange Productions, Inc.* (2019) 41 Cal.App.5th 771, 776, fn. 3.)  The notice of appeal, which is properly taken from the judgment, was filed within 60 days after the court filed the judgment and is therefore timely.

Second, Anabo's respondent's brief does not provide citations to the record on appeal but, rather, to documents filed in the trial court.  (Cal. Rules of Court, rule 8.204(a)(1)(C).)  Anabo concedes the point but claims he unsuccessfully attempted to obtain the record from the trial court's clerk.  Although Anabo's failure to provide proper record citations allows us to treat

---

[4] As explained *post*, PI2016's underlying action and thus this appeal are mainly directed at Anabo; the claims against the Ghanbari defendants are derivative of the action against Anabo.

12

his arguments as waived (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246), we decline to do so as the citations in his brief are to documents that are included in the appellate record.

## II.    *Standard of Review*

"A decision to sustain a demurrer is a legal ruling, which we review de novo.  [Citation].  In doing so, we 'must assume the truth of the complaint's properly pleaded or implied factual allegations.'  [Citation.]  We ' " ' "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." ' " '  [Citation.]  'We also consider the complaint's exhibits.'  [Citation.]  Appellant bears the burden of demonstrating that the trial court erred in sustaining the demurrer.  [Citation.]"  (*Baldwin v. AAA Northern California, Nevada & Utah Ins. Exchange* (2016) 1 Cal.App.5th 545, 549.)  We may "consider matters which may be judicially noticed.  [Citation.]"  (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)  Moreover, we "must affirm if the trial court's decision to sustain the demurrer was correct on any theory."  (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808.)

We now turn to the arguments related to the sustaining of Anabo's demurrer to the TAC without leave to amend.

## III.   *The Demurrer of Anabo*

The TAC alleged that Anabo breached the Agreement in various ways and sought specific performance of the Agreement or, alternatively, damages.[5]  "To prevail on a cause of action for breach of contract, the plaintiff

---

[5] Anabo points out that the TAC's single cause of action is labeled "specific performance," which is a remedy, not a cause of action.  Technically, PI2016 had one cause of action for breach of contract; specific performance and damages are alternative *remedies* for it.  (*Rogers v. Davis* (1994) 28 Cal.App.4th 1215, 1218, fn. 2.)  Because the TAC allegations sufficiently apprised the defendants "of the issues [they were] being asked to meet," we reject Anabo's assertion that the TAC was subject to demurrer based on the

must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." (*Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1186.) Here, we conclude the trial court correctly found PI2016 failed to allege facts to support the elements for breach of contract, thereby precluding its right to specific performance or damages.

A.      *PI2016's Failure to Perform*

In sustaining Anabo's demurrer, the court mainly focused on the second element of a breach of contract claim: PI2016's performance under the Agreement. The court found PI2016 failed to allege it had satisfied a condition precedent to Anabo's performance.

"A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." (Civ. Code, § 1436.)[6] "[A] plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance. [Citation.] Similarly, where defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove the event transpired. [Citation.]" (*Consolidated World Investments, Inc. v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 380; § 1439.) Thus, "a party's failure to perform a condition precedent will preclude an action for breach of contract." (*Richman v. Hartley, supra*, 224 Cal.App.4th at p. 1192.) Moreover, "[s]pecific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions

---

incorrect labeling. (*Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 139, fn. 2.)

[6] All further statutory references are to the Civil Code.

14

precedent on his part to the obligation of the other party . . . ." (§ 3392; see *Evarts v. Johnston* (1949) 34 Cal.2d 6, 9.)

In real estate contracts, "[b]oth buyer and seller may desire to have certain conditions precedent (often referred to as 'contingencies' or 'conditions') to their respective obligations to buy and sell the property." (Greenwald & Bank, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2020) ¶ 4:385.) "[A] common form of real estate contract binds both parties at the outset (rendering the transaction a bilateral contract) while including a contingency, such as a loan or inspection contingency, that allows one or both parties to withdraw should the contingency fail." (*Steiner v. Thexton* (2010) 48 Cal.4th 411, 419; see, e.g., *Fogarty v. Saathoff* (1982) 128 Cal.App.3d 780, 787 [failure of buyer to remove a lender approval contingency justified cancelation on the part of seller].)

At issue in this case is the inspection contingency set forth in paragraphs 12 and 14 of the Agreement, which give PI2016 the right to investigate or inspect the Property as a contingency of the Agreement. As explained *ante*, the court found the TAC failed to allege that the contingency had been satisfied or removed, which the court found was a condition precedent to Anabo's performance.

PI2016 disputes the court's conclusions. PI2016 argues, as it did below, that Anabo's April 24 demand to close escrow and PI2016's April 24 notice to seller to perform should be construed as removing contingencies. PI2016 contends that the notice to seller to perform "does not allege that [Anabo] must complete any repairs nor does it allege any outstanding contingency whatsoever." PI2016 also argues that under paragraph 14F of the Agreement, the demand to close escrow " 'removes any contingency or cancellation rights' and 'Buyer shall conclusively be deemed to have

15

completed all Buyer investigations . . . elected to proceed with the transaction and . . . assumed all liability, responsibility and expenses for repairs or correction . . . ."

The trial court properly rejected these contentions. It concluded, "Neither [the notice to seller to perform nor the demand to close escrow] can reasonably be understood as a waiver of the buyer's right to inspection and repair. Under both their own terms and the terms of the Agreement, these forms do not purport to remove or waive contingencies: they are the first steps toward each side cancelling the Agreement for failure of the other to perform." We agree with the court's interpretation, which PI2016 fails to meaningfully address.

The court's analysis finds support in a California real estate law treatise, which has interpreted the terms of the preprinted purchase agreement form that the parties have used here. (Miller & Starr, Cal. Real Estate Forms (2d ed. 2020) § 1:94.) The authors point to the opening caption in paragraph 14, which states that the removal of contingencies or cancelation must be in writing to be effective. (*Ibid.*) Based on this provision, the authors explain, "The RPA applies the 'active' method of contingency removal, NOT the 'passive' method." (*Ibid.*) As such, they conclude, "Silence does not make the contingency go away nor create a cancellation." (*Ibid.*) By the same token, "silence or no-action is not approval, [and] the contract will remain in limbo unless seller takes affirmative action." (*Ibid.*)

The authors' analysis is persuasive. We agree that paragraph 14 of the Agreement imposes an affirmative obligation on the buyer to remove contingencies or cancel the Agreement in writing. We therefore reject PI2016's argument that either the demand to close escrow or the notice to

16

seller to perform removed contingencies. Indeed, PI2016 left blank the portion of the notice to seller to perform entitled "Contingencies," which provides space to insert information related to contingencies. (All caps, boldface, and underscoring omitted.) Additionally, the court observed that "the Notice to Seller to Perform is on C.A.R. Form NSP, not the form specified by the Agreement as the form by which the buyer removes contingencies, C.A.R. Form CR."

Moreover, PI2016 is simply incorrect when it argues that paragraph 14F provides that "demand to close . . . 'removes any contingency or cancellation rights.' " Paragraph 14F does not state or suggest such a proposition. Rather, it reiterates that the buyer's removal of contingencies or cancelation of the Agreement must be made in writing, before "Buyer shall conclusively be deemed to have (I) completed all Buyer investigations . . . ; (II) elected to proceed with the transaction; and (III) assumed all liability, responsibility and expense for Repairs . . . ." As stated *ante*, nothing in the demand to close escrow or notice to seller to perform indicates PI2016's intent to remove contingencies of the Agreement.

In another attempt to establish "there were no contingencies," PI2016 in its reply brief cites to Anabo's declaration supporting his bankruptcy court motion for an order approving the sale of the Property to PI2016. In the declaration, Anabo stated that "the sale is not subject to any further inspections or contingencies and the Property is being sold 'as is', subject to Court Approval." Because PI2016 did not raise this argument in the trial court or in its opening brief, we may disregard it. (*Keiffer v. Bechtel Corp.* (1998) 65 Cal.App.4th 893, 900.) In any event, PI2016's reliance on Anabo's declaration is misplaced. In determining the sufficiency of a complaint against a demurrer, we may "consider matters which may be judicially

17

noticed. [Citation.]" (*Serrano v. Priest, supra*, 5 Cal.3d at p. 591.) While a court may take judicial notice of the existence of court records (Evid. Code, § 452, subd. (d)), which includes affidavits or declarations, "[t]he truth of any factual matters that might be deduced from official records is not the proper subject of judicial notice. [Citation.]" (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 885; see *id.* at p. 882 ["The underlying theory of judicial notice is that the matter being judicially noticed is a law or fact that is *not reasonably subject to dispute*"].) Here, Anabo's declaration's statement that the sale of the Property to PI2016 was not "subject to further inspections or contingencies" is reasonably subject to dispute. As such, the truth of that statement is not a matter that may be judicially noticed, and it is improper for a court to use that statement as a basis to rule on the demurrer. Further, the contention fails in any event since, as explained *ante*, the Agreement provides that it is the buyer's, not the seller's, obligation to remove any contingencies related to the buyer's inspections of the Property or request for repairs.

Next, PI2016 asserts that although it alleged it had requested that Anabo "restore the property into lawful and properly permitted units," it did so after the contingency period expired. According to PI2016, "the right to assert contingencies or cancellation rights was waived after [the contingency period] . . . ." After that date, PI2016 says, it "had no remaining contingency rights under the terms of the [Agreement]." PI2016's arguments are problematic for several reasons.

First, because PI2016 did not raise this argument in the trial court, it has been forfeited on appeal. (See *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1191–1192 [forfeiture applied to plaintiff's argument not raised in opposition to demurrer]; *Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556,

18

567–568 (*Wittenberg*) [finding courts are not required, and may properly decline, to consider arguments not raised in demurrer even if based on purely legal questions].) As explained in *Wittenberg, supra*, 51 Cal.App.5th at p. 567, " '[F]airness is at the heart of a waiver claim. Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.] Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.' "

These concerns resonate here. In the trial court, PI2016 asserted breach of contract and sought specific performance based mainly on Anabo's alleged failure to address PI2016's request for repairs to the Property's basement units, which it claimed were not code-compliant. Now on appeal, PI2016 seeks to distance itself from that theory. It appears PI2016 is arguing that if no request for repairs was made before the contingency period in paragraph 14B(1) expired on April 6,[7] then there were "no remaining contingencies regarding the condition of the property" as of that date. In so arguing, PI2016 suggests that we should consider only the actions it took before April 6, which allegedly were none; thus, the fact it requested repairs after April 6 is of no consequence. Indeed, PI2016 implies that we may

_____

[7] The contingency period in paragraph 14B(1) expired on April 6, not April 3 as PI2016 asserts. As noted *ante*, under paragraphs 14B(1) and (2), PI2016 had "0 . . . Days After Acceptance" to complete inspections and request repairs. The Agreement defines " 'Acceptance' " as "the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party . . . ." The date of acceptance was thus April 6. Zero days after that date is, of course, April 6.

19

disregard its allegation that it requested repairs altogether.[8]  Whereas PI2016 affirmatively invoked its right to request repairs as a sword in the trial court, PI2016 now sets it up as a shield from its obligations to perform under the Agreement.  PI2016 cannot have it both ways.  As noted *ante*, a party may not engage in a bait and switch with the courts by relying on one theory at trial and asserting a different—and in this case inconsistent—theory on appeal.  (See *Wittenberg, supra*, 51 Cal.App.5th at p. 567.)  Applying the forfeiture rule is, therefore, appropriate here.

Even if we were to overlook the forfeiture, PI2016's assertions are unpersuasive.  For one, the premise of its arguments—that it had no right under the Agreement to request repairs after April 6—is flawed.  It is true that PI2016 alleged it requested repairs after April 6, on or after April 14.  However, PI2016 also alleged that Anabo "prevented [PI2016] from [conducting] any inspection until April 14," after which PI2016 requested repairs.  This allegation supports a finding that Anabo's conduct excused PI2016's delay in requesting repairs.  (See *Semas v. Bergman* (1960) 178 Cal.App.2d 758, 762 ["A promisor's delay in performance is excused to the extent acts of the promisee caused such delay"]; § 1511, subd. 1.)  As such, we do not accept PI2016's assumption that it had no right to request repairs at the time it did.[9]

---

[8] PI2016 states that the contents of the Agreement and other documents attached to the TAC "will take precedence over and supersede any inconsistent or contrary allegations set forth in the pleadings."  (*Building Permit Consultants, Inc. v. Mazur* (2004) 122 Cal.App.4th 1400, 1409.)  PI2016 implies that its allegation it had requested repairs is subject to this rule and thus superseded by the Agreement or other incorporated documents.  PI2016, however, fails to explain how any of the TAC allegations conflict with those documents.  In any event, we do not find such a conflict exists.

[9] If, as PI2016 contends, it had no right to request repairs after the contingency period, the allegation that it requested repairs nonetheless and

20

In any event, PI2016 fails to explain how its inaction during the contingency period had the effect of satisfying or removing the inspection contingency. As explained *ante*, a reasonable interpretation of paragraph 14 and its subparagraphs is that "silence or no-action is not approval, [and] the contract will remain in limbo unless seller takes affirmative action." (Miller & Starr, *supra*, § 1:94.) We apply this reasoning here and reject PI2016's contention that its delay in requesting repairs nullified contingencies.

In sum, we agree with the trial court that PI2016 failed to allege the contingencies of the Agreement were removed or satisfied and Anabo therefore had no obligation to transfer the Property to it. Because PI2016 failed to plead the elements of its breach of contract cause of action, its request for specific performance and damages necessarily fail.

Assuming PI2016 is correct that all contingencies of the Agreement had been removed or satisfied, we would still affirm the judgment based on PI2016's failure to close escrow.

---

then insisted on Anabo's sale of the Property to it with those repairs raises a question whether PI2016 repudiated the Agreement—a question PI2016 does not explain away and we do not resolve. (See 23 Williston on Contracts (4th ed. 2020) § 63:47 ["party . . . commit[s] an anticipatory breach by making an express demand for a performance to which the party is not entitled"]; Rest.2d Contracts, § 250, cmt. b ["language that under a fair reading 'amounts to a statement of intention not to perform except on conditions which go beyond the contract' constitutes a repudiation"]; see also 23 Williston on Contracts, *supra*, § 63:48 ["It is an anticipatory breach to . . . insist that [a contract's] meaning or legal effect are different in a material particular from the true meaning or effect, coupled with the assertion, express or implied in fact, that performance will be made only according to the erroneous interpretation"]; see, e.g., *Freedman v. Rector, etc. of St. Mathias Parish* (1951) 37 Cal.2d 16, 19 [plaintiff repudiated land sale contract by insisting on event he had no right to impose, precluding specific performance or damages for breach of contract].)

In a contract for the sale of real property, the buyer's obligation to deposit the purchase price into escrow within the time specified in the contract, and the contract's provision that time is of the essence, are as binding on the buyer as the promise to convey the land is on the seller. (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1337–1338; *Pitt v. Mallalieu* (1948) 85 Cal.App.2d 77, 81.) "Thus, where the parties have made time the essence of the contract, at the expiration of time without tender by either party, both parties are discharged." (*Pittman v. Canham* (1992) 2 Cal.App.4th 556, 560, citing 3A Corbin on Contracts (1960) § 663, p. 181.) In this circumstance, a buyer's failure to pay the money within the specified time deprives it of the right to enforce performance of the seller, who holds the privilege of terminating the sale contract. (*Pitt, supra*, 85 Cal.App.2d at p. 81.)

A contract's timeliness provision, however, may be waived by the party for whose benefit it was made. (*Galdjie v. Darwish, supra*, 113 Cal.App.4th at p. 1339.) Courts generally find waiver when a party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that he or she has relinquished the right. (*Old Republic Ins. Co. v. FSR Brokerage, Inc.* (2000) 80 Cal.App.4th 666, 678.) But even if a party waives the time of performance, it may reinstate the time conditions by giving definite notice to the other party. (*Gonzalez v. Hirose* (1948) 33 Cal.2d 213, 216.)

Here, the Agreement required concurrent performances by the parties—PI2016's deposit of full purchase price and Anabo's conveyance of deed—at the close of escrow. It also contained a "[t]ime is of the essence" provision. The Agreement called for close of escrow on April 26—ten days after receipt of the bankruptcy court's order approving the sale to PI2016, the

22

date of which was April 16, when that order was entered on its docket. However, since PI2016 received Anabo's demand to close escrow on April 24, it had until April 27, three days later, to close escrow, pursuant to paragraph 14G of the Agreement.[10]

There is no allegation that this date was waived. Even assuming the deadline related to the inspection contingency in paragraph 14B(1) had been waived based on Anabo's alleged delay in granting PI2016 access to the Property, Anabo reestablished the time conditions by giving notice in his demand to close escrow that the deal must still close within a specified time. (*Gonzalez v. Hirose, supra*, 33 Cal.2d at p. 216.) Thus, PI2016 was required to close escrow by April 27. It is undisputed that PI2016 did not tender payment on that date, or ever. PI2016's failure to pay the purchase price by April 27 effectively discharged Anabo's duty to perform its obligations under the Agreement. (*Pittman v. Canham, supra*, 2 Cal.App.4th at p. 560.)

In sum, we conclude the trial court properly sustained Anabo's demurrer to the TAC without leave to amend on the grounds that PI2016 failed to allege it had performed its obligations under the Agreement.

---

[10] Paragraph 14G states, "Before . . . Seller may cancel this Agreement for failure of the other party to close escrow . . . Seller must first Deliver to the other Party a demand to close escrow . . . . The [demand to close escrow] shall . . . give the other Party at least 3 . . . Days After Delivery to close escrow." Under paragraph 30I, " 'Delivery' . . . means and shall be effective upon: personal receipt by Buyer or Seller . . . , regardless of the method used (i.e., messenger, mail, email, fax, other)." Here, the demand was "delivered" on April 24, when PI2016 received it. Three days after that date is April 27, not April 26, which is the date Anabo wrote in the space provided in the demand. Presumably, Anabo wrote April 26 either because that date was the originally agreed upon closing date or he was counting three days from when he signed the demand on April 23.

B.    *Damages*

Even if PI2016 could otherwise allege Anabo breached the Agreement, it failed to allege facts it suffered damages from the breach.  The alleged damages were (1) Anabo's failure to return PI2016's $5,000 deposit in escrow and (2) the loss of real estate investment opportunities.  These allegations were also contained in the SAC, which the trial court rejected when it sustained the demurrer to the SAC's fraud-based causes of action.  Rather than address the court's reasons why the SAC allegations were defective, the TAC simply repeats the SAC's allegations.  Further, on appeal, PI2016 provides no meaningful analysis, but rather conclusory statements, as to why its TAC allegations supported recovery of damages.  PI2016's failure to support its arguments with cogent analysis and citations to authority forfeits them on appeal.  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)  In any event, we conclude the TAC does not plead facts supporting PI2016's recovery for damages from the alleged breach.

First, with respect to its unreturned escrow deposit, the TAC fails to establish a causal connection between the breach and the damages sought.  "For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."  (§ 3300.)  Under the Agreement, PI2016 has the right to demand performance or cancel the Agreement and demand the return of its deposit.  Such a demand is binding on the escrow holder 10 days after delivery unless the seller objects.  PI2016 did not allege it had made, or was prevented from making, a demand for return of its deposit, let alone that Anabo had objected to such demand.  It also does not

24

allege it is prevented from making such a demand.  PI2016 thus has failed to show Anabo caused its claimed inability to recover its deposit.

Second, PI2016's allegation that it suffered damages by losing investment opportunities in other real properties also fails.  "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."  (§ 3301; see *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773–774 ["Such damages must 'be proven to be certain both as to their occurrence and their extent, albeit not with "mathematical precision" ' "].)  We agree with the court that PI2016's allegations of lost investment opportunities are too speculative.  As the court observed, PI2016 "does not allege 'what facts lead PI2016 to believe that it could have profitably purchased the other properties.' "  For example, "[PI2016] does not allege that . . . the owners of those properties would have sold to PI2016 instead of another buyer and that PI2016 could have resold the properties for a profit without undertaking costly repairs or improvements not alleged in the [TAC]."

In sum, we conclude PI2016 failed to state a cause of action for breach of contract and, therefore, it is not entitled to specific performance or damages.  Accordingly, the trial court properly sustained Anabo's demurrer to the TAC without leave to amend.  In light of our conclusion, we need not address Anabo's additional arguments in support of affirmance.  (See *Kennedy v. Baxter Healthcare Corp., supra*, 43 Cal.App.4th at pp. 807–808.)

## IV. *The Demurrer of the Ghanbari Defendants*

PI2016 also sought specific performance against or damages from the Ghanbari defendants.  The conveyance of title to a buyer can be ordered by a specific performance decree against subsequent third party purchasers who had knowledge of the previous buyer's claimed interest before they purchased

25

the property. (See § 3395.) PI2016 contends the Ghanbari defendants had constructive notice of its claimed interest in the property because it recorded a notice of lis pendens.[11] The notice was attached to the declaration of PI2016's attorney in support of the opposition to the Ghanbari defendants' demurrer. As explained *ante*, a court may consider matters that may be judicially noticed on demurrer, and a law or fact that is not reasonably subject to dispute is a proper subject of judicial notice. (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort, supra*, 91 Cal.App.4th at p. 882.) Here, whether the Ghanbari defendants had constructive notice of PI2016's claimed interest is reasonably subject to dispute in light of their contention that the lis pendens was invalid for defective service. (See *Rey Sanchez Investments v. Superior Court* (2016) 244 Cal.App.4th 259, 263 [a party may allege a lis pendens is " 'void and invalid' " based on defective service and may move to expunge the lis pendens on that basis], citing Code Civ. Proc., §§ 405.22–405.23, 405.31–405.33.) Accordingly, the legal effect of the lis pendens proposed by PI2016 is not subject to judicial notice. In any event, even assuming the Ghanbari defendants had constructive notice of PI2016's claimed interest in the Property and were therefore not bona fide purchasers of the Property, PI2016 has failed to allege it is entitled to relief from the Ghanbari defendants. As the court found, PI2016's action against the Ghanbari defendants depends upon its ability to prevail in its action against Anabo. Because we have concluded PI2016 failed to plead cognizable claims

---

[11] Proper recordation of a lis pendens during litigation gives constructive notice of the pendency of an action affecting title to or possession of the described real property. (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647.) PI2016's lis pendens was recorded on May 10, before the deed transferring the Property to the Ghanbari defendants was executed and recorded.

26

against Anabo, the court properly sustained the Ghanbari defendants' demurrer to the TAC without leave to amend.

## V. *Leave to Amend*

Finally, " '[w]hen a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." ' " (*Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 163.)  PI2016 shoulders the burden to show a reasonable possibility the TAC can be amended to state a cause of action.  (*Id.* at pp. 163–164.)  PI2016 has not met this burden. PI2016 notes that the TAC contains allegations related to prior causes of action based on fraud, which the court previously dismissed.  PI2016 then states that the TAC "could be cleaned-up with one final leave to amend." This, however, does not address how the defective *breach of contract* allegations could be cured by amendment.  "Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44.)  As such, the court properly denied leave to amend the TAC.

## DISPOSITION

The judgment is affirmed.  Defendants Anabo, Ghanbari, and Leung are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

_____
Jackson, J.


WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Wiseman, J.*



A158290/*Property Investors 2016, LLC v. Anabo*



_____

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.